OPINION OF THE COURT
Jasen, J.
On this appeal, we are asked to decide whether reversible error occurred when the prosecutor was permitted, over objection, to elicit on redirect examination hearsay testimony implicating the defendant in the crimes charged. In order to resolve this question, we must examine the scope of permissible redirect examination in instances where a defendant has “opened the door” to new matters on cross-examination.
Early in the afternoon of January 10, 1978, Mario “Cuba” Hernandez was shot in the chest while standing in the hallway of a public housing project located in The Bronx. Hernandez died a short while later. Although the incident was overheard by several tenants, there were no witnesses to the shooting, and no one could identify any of the perpetrators who fled from the scene.
In the months that followed, the investigation focused on defendant Israel “Paleta” Melendez and codefendant Robert “Piro” Mendez. As a result of information provided by Jesus Marrero, who was also a suspect in the shooting, defendant Melendez and codefendant Mendez were arrested in early July, 1978 by the officer conducting the Hernandez investigation, Detective Benjamin Alexis. The *448 defendants were thereafter indicted for, inter alia, murder in the second degree (Penal Law, § 125.25, subd 3) and criminal possession of a weapon in the second degree (Penal Law, § 265.03).
At trial, the evidence most damaging to the defendants came from the testimony of Jesus Marrero and Hector Camacho. Marrero, who knew both defendants for a number of years, testified that on January 12,1978, while on a 24-hour pass from a methadone treatment program, he happened to meet codefendant Mendez on the street and asked him for the $25 previously lent to him for bail in connection with a prior arrest. According to Marrero’s testimony, codefendant Mendez said that “the homicide squad was looking for him for something Paleta [defendant Melendez] had done”; that he, Paleta and an unidentified third person named “Chino” had “took off a guy in the project”; that defendant Melendez had shot him; and that all three escaped in Chino’s car. Marrero further testified that he was with defendant Melendez, codefendant Mendez and some other individuals the following day on a rooftop. At that time, Marrero testified that he overheard defendant Melendez say to codefendant Mendez that “if he would have held him right, he wouldn’t have had to shoot him” and that codefendant Mendez replied that “it was his fault for not searching him right.” Marrero also testified that he heard the deceased’s nickname, “Cuba”, mentioned in the course of this conversation.
Marrero’s story was corroborated to a certain extent by the testimony of Hector Camacho. Camacho testified that on an unspecified date in January, 1978, he had finished “getting high” on the rooftop of a building and was walking down the stairs when he heard codefendant Mendez ask defendant Melendez “what he shot him for.”
The arresting officer, Detective Alexis, was also called as a witness for the prosecution. On cross-examination by counsel for defendant Melendez, the following colloquy took place:
“Q. Det. Alexis, when Marrero was brought down to the precinct, he was a suspect, wasn’t he?
“A. Yes, he was.
*449 . “Q. And you advised him of his rights, is that what you testified before, of his constitutional rights?
“A. Yes, I did.
“Q. And you began asking him about the homicide that occurred in January, is that right?
“A. That’s correct.
“Q. Did you advise him that he was a suspect, in those words?
“A. No, I did not.
* * *
“Q. You were asking him about the homicide, is that right?
“A. That’s correct.
“Q. Now, Detective, you were involved in filling out an arrest report, I take it, is that right?
“A. Yes, I was.
“Q. And at that time, isn’t it a fact that you indicated that Mr. Melendez had committed a crime in concert with two others, is that right?
* * *
“Q. And when you arrested Mr. Mendez, you indicated on there that the crime had occurred — three people involved, is that right?
“A. Yes, I did.”
On redirect, the prosecutor asked Detective Alexis for the basis upon which he considered Marrero a suspect. Counsel for defendant Melendez immediately objected to this question on the ground that the prosecutor intended to “bring out hearsay testimony regarding the police officer’s investigation.” The Trial Judge overruled this objection, stating that counsel for defendant Melendez had “opened the door” by raising the question whether Marrero was a suspect on cross-examination. Counsel excepted to the court’s ruling. Detective Alexis then proceeded to tell the jury that a “concerned citizen” had informed him shortly after the Hernandez shooting that the two individuals responsible were named “Paleta” and “Piro”; and that this *450 informant identified “Paleta” as defendant Melendez and “Piro” as Jesus Marrero. The detective also testified that he had learned from others that Marrero was known as both “Pete” and “Piro”, but that Marrero later told him that he was “Pete” and codefendant Mendez was known as “Piro”, and that they were often mistaken for one another because they looked alike. Finally, Detective Alexis, over objection by counsel for defendant Melendez, was permitted to read from his notebook the detailed physical descriptions of both defendant Melendez and the individual named “Piro” provided by the “concerned citizen” informant two days after the shooting.
The jury found both defendants guilty of murder in the second degree and criminal possession of a weapon in the second degree.[1] Defendant Melendez was sentenced to concurrent terms of 25 years to life on the murder conviction and 5 to 15 years on the conviction for possession of a weapon.
On appeal, a divided Appellate Division affirmed. A majority of the court could “find no error with any portion of [the] redirect testimony since defendant’s counsel consciously initiated this line of questioning and thus opened the door.” According to the court below, defense counsel was attempting to impugn the credibility of Marrero by asking Detective Alexis whether Marrero was considered a suspect. As a result, the Appellate Division was of the opinion that the prosecutor could “clarify the grounds upon which the detective based his suspicions” and “show that there was no collaboration between his office and [Marrero] for the purpose of convicting an innocent man.”[2]
*451 The dissenters at the Appellate Division were of the opinion that it was error to utilize the cross-examination of Detective Alexis under the “opening the door” theory as a vehicle for the needless introduction of incriminating hearsay evidence to the effect that defendant Melendez had been identified by a neighborhood source as one of the participants in the Hernandez shooting two days after the incident occurred. We agree.
The extent of redirect examination is, for the most part, governed by the sound discretion of the trial court. (People v Zigouras, 163 NY 250, 255-256; People v Buchanan, 145 NY 1, 24; People v Fay, 270 App Div 261, affd 296 NY 510, affd sub nom. Fay v New York, 332 US 261; see 6 Wigmore, Evidence [Chadbourn rev ed], § 1896, p 737.) Where, however, the opposing party “opens the door” on cross-examination to matters not touched upon during the direct examination, a party has the right on redirect “to explain, clarify and fully elicit [the] question only partially examined” on cross-examination. (People v Regina, 19 NY2d 65, 78; see, also, Feblot v New York Times Co., 32 NY2d 486, 497-498.)
The “opening the door” theory has been recognized in a variety of situations. For example, apparent inconsistencies or contradictions in a witness’ statements or acts brought out on cross-examination to discredit his testimony may be reconciled on redirect by relating to the jury the relevant surrounding circumstances. (People v Buchalter, 289 NY 181, 202-203; Collins v Kelly, 226 NY 180, 183-184; 3A Wigmore, Evidence [Chadbourn rev ed], § 1044, p 1062.) Similarly, where cross-examination raises the inference that the witness’ testimony was the product of a recent fabrication, a party on redirect can refute this allegation either by introducing consistent statements made by the witness at a time when there was no motive to lie or by having the witness explain why the information was not disclosed earlier. (People v Davis, 44 NY2d 269, 277-278; Crawford v Nilan, 289 NY 444, 450-451; Ferris v Sterling, 214 NY 249, 254; People v Buchanan, 145 NY 1, 24-25, supra.) In addition, in situations where only a part of a statement has been brought out on cross-examination, *452 the other parts may be introduced on redirect examination for the purpose of explaining or clarifying the statement. (People v Torre, 42 NY2d 1036, 1037; People v Schlessel, 196 NY 476, 480-481; 7 Wigmore, Evidence [Chadbourn rev ed], § 2113; see, generally, Richardson, Evidence [10th ed], § 523; Fisch, New York Evidence [2d ed], § 344.)
The “opening the door” theory must necessarily be approached on a case-by-case basis. As a result, this principle is not readily amenable to any prescribed set of rules. (See McCormick, Evidence [2d ed], § 57.) Nonetheless, it does have its limitations. By simply broaching a new issue on cross-examination, a party does not thereby run the risk that all evidence, no matter how remote or tangential to the subject matter opened up, will be brought out on redirect. Rather, the trial court must limit the inquiry on redirect to the “subject-matter of the cross-examination [which] bear[s] upon the question at issue.” (People v Buchanan, 145 NY 1, 24, supra.) Moreover, the court should only allow so much additional evidence to be introduced on redirect as is necessary to “meet what has been brought out in the meantime upon the cross-examination.” (6 Wigmore, Evidence [Chadbourn rev ed], § 1896, p 737; accord People v Schlessel, 196 NY 476, 481, supra; People v Lewis, 18 AD2d 277, 279-280.) The “opening the door” theory does not provide an independent basis for introducing new evidence on redirect; nor does it afford a party the opportunity to place evidence before the jury that should have been brought out on direct examination. The principle merely allows a party to explain or clarify on redirect matters that have been put in issue for the first time on cross-examination, and the trial court should normally “exclude all evidence which has not been made necessary by the opponent’s case in reply.” (6 Wigmore, § 1873, p 672 [emphasis in original].)
In this case, it was error to permit the prosecutor to elicit from Detective Alexis the hearsay testimony that a “concerned citizen” had informed him two days after the shooting that defendant Melendez was one of the participants in the crime. Defense counsel merely cross-examined the detective as to whether he considered Marrero a suspect. True, this line of questioning afforded the prosecutor an *453 opportunity to amplify on redirect the basis for the detective’s suspicions as to Marrero. This cross-examination did not, however, clear the way for the prosecutor to explore the entire ambit of the officer’s investigation, including all information connecting the defendant with the homicide. In short, although defense counsel may have partially “opened the door” by asking whether Marrero was a suspect, the passageway thus created was not so wide as to admit the hearsay testimony directly implicating the defendant in the crimes charged. The door was opened only as to whether the witness considered Marrero a suspect. Thus, it was error to broaden the scope of inquiry to include all the hearsay information the detective had learned frtim other people as part of his investigation of this case.
The evidence of defendant’s guilt, although legally sufficient, was far from overwhelming. The only proof linking the defendant to the shooting was provided by Marrero and Camacho, and the credibility of these witnesses was questionable. Both were confessed drug addicts and both admitted that they were using drugs when they overheard the conversations in question. Camacho had been arrested on at least four previous occasions. Marrero had ah extensive criminal record and, in fact, was a suspect in the Hernandez murder at the time he incriminated the two defendants. Under the circumstances, we cannot say that the erroneous admission of hearsay testimony to the effect that a “concerned citizen” identified the defendant two days after the homicide as the one who shot Hernandez was harmless.
Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.
Chief Judge Cooke and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur.
Order reversed, etc.

. Codefendant Mendez’ convictions were subsequently affirmed by the Appellate Division (74 AD2d 1006). The propriety of that affirmance is not before us on this appeal.

. The Appellate Division also expressed the view that the hearsay testimony of Detective Alexis on redirect was admissible because it was only introduced to show how the detective formed his belief that Marrero was a suspect and not to establish defendant’s guilt. (See Richardson, Evidence [10th ed], § 205, p 182.) Yet, that reasoning does not justify the admission of that part of Alexis’ redirect testimony which related solely to defendant Melendez. The portion of the testimony inculpating defendant Melendez in no sense demonstrated how Detective Alexis arrived at the conclusion that Marrero was a suspect and could only have been considered by the jury as evidence of defendant’s guilt. As such, this part of the redirect testimony clearly was inadmissible hearsay.