■ PERLINE MATTHEWS et al., Appellants, v NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, Respondent. [606 NYS2d 206] —Judgment of the Supreme Court, New York County (Carol Arber, J.), entered February 8, 1993, after a jury trial of this medical malpractice action, entered in favor of defendant, is reversed, on the law and facts, without costs, and the matter is remanded for a new trial.

Plaintiff Perline Matthews underwent a hysterectomy in Metropolitan Hospital on October 24, 1983. In the night following the surgery, she experienced a burning sensation around her buttocks. At trial she testified that she also experienced pain in her rectum. On behalf of the plaintiff, the hospital's dermatologist testified that Mrs. Matthews suffered from erythematosis, large blisters filled with clear liquid. In the absence of a prior history of the condition, and upon the timing of the appearance of the condition, the dermatologist opined that Mrs. Matthews' skin had been irritated by ethylene oxide, a gas used to sterilize surgical equipment. While plaintiff testified that she suffered a permanent injury, dermatologist Goodman said the condition was resolved by November 14, 1983.

Plaintiff's medical expert testified that any item sterilized with ethylene oxide should not be used for 24 hours, or 6 hours if the items are subjected to a "special machine". He said that Matthews' injuries presented "a classical case of ethylene oxide burns".

Doctor Lopez performed the surgery. Portions of Lopez's EBT show that Matthews was subjected to a routine "D and C" prior to the hysterectomy. During the D and C, Matthews' legs were draped. Plastic was placed under her buttocks. After Matthews was "painted" with benedine solution, the D and C was performed. Once the D and C was complete, the plastic drape was removed. Doctor Tang was the chief resident. Tang noted Matthews' skin condition after the surgery and ordered a dermatological consultation. Neither Lopez nor Tang knew the cause of Matthews' erythematosis.

The operating room nurse, Zapanta, who claimed to have an independent recollection of how Matthews "would have been prepared for surgery", testified that Mrs. Matthews was placed on a laundered sheet before the benedine antiseptic was applied. After the antiseptic was applied, the sheet was removed and a pre-packaged disposable sterile drape was placed under Mrs. Matthews. The drape was opened just prior to its use. After the 15-minute D and C, the drape was thrown away. During the hysterectomy Mrs. Matthews lay supine on the laundry sheet covering the operating table. Zapanta, who was not produced for examination before trial, said that nothing on the package indicated that the drape should be aired out. On cross-examination, Zapanta, who said she had no idea how Matthews was injured, agreed that ethylene oxide can cause watery eyes and irritation.

Inez Kemp, employed in the hospital's central sterilization department testified that pre-packaged disposable drapes had been in use at the hospital since 1982. She testified that the drapes are purchased from "Baxter". She also said that the packages containing the drapes do not contain instructions to aerate the drapes before use. She had never aerated pre-packaged drapes because "the product already should have been aerated by the company before it arrived to the hospital". Kemp stated that the suppliers of pre-packaged drapes use ethylene oxide.

Doctor Besito testified that ethylene oxide was used to sterilize equipment that cannot be sterilized by other means. Responding to a hypothetical question assuming the circumstances of Matthews' surgery, including the use of a drape manufactured by Baxter, Doctor Auerbach, associated with University Hospital, said that Matthews' injury was caused by "the ethylene oxide that had been used to sterilize that pack".

A reversal is in order because the opinion evidence of Kemp and Auerbach was not based on facts in the record or upon

the witnesses' personal knowledge *(Moore v Brunswick Hosp. Ctr.,* 150 AD2d 183, 185). There are two exceptions to the rule *(People v Sugden,* 35 NY2d 453, 460), but the record does not show that the basis of the Kemp and Auerbach testimony was "of a kind accepted in the profession as reliable in forming a professional opinion", and certainly Auerbach was not subject to full cross-examination at the trial. In short, defendant established at trial that ethylene oxide was used to sterilize the pre-packaged drapes without producing a witness with first hand knowledge. Both Kemp and Auerbach testified as expert witnesses. However, while Kemp testified that she was familiar with the hospital's procedures, when she spoke of items commercially sterilized with ethylene oxide, she offered no first hand knowledge of the manufacturing process of disposable drapes. Similarly, while Auerbach said it was accepted medical practice to use pre-packaged sterilized drapes immediately, he did not establish that he had first hand knowledge of Baxter's use of ethylene oxide.

Moreover, while defendant now urges that plaintiff " 'open[ed] the door' " *(People v Melendez,* 55 NY2d 445, 451), much of Auerbach's comments on the use of ethylene oxide preceded the questions on cross-examination which suggested that Auerbach was told by an employee of the manufacturer that only cobalt and radiation were used on disposable items. The trial court shortly thereafter said that it had warned counsel that he was about "to fall over the abyss", but counsel's argument that defendant had an obligation to produce someone from the manufacturer is well-taken.

In reaching our conclusion, we are guided by our decision in *Carvache v New York City Tr. Auth.* (175 AD2d 41). While *Carvache* can be distinguished on the facts, it is clear that Zapanta's testimony formed the foundation that defendant used to build its hearsay case that ethylene oxide from the pre-packaged drape caused Matthews' injury. Concur—Carro, J. P., Asch, Rubin and Nardelli, JJ.

Kupferman, J., concurs in a memorandum as follows: I concur in the result only on the basis that nurse Zapanta was an undisclosed fact witness and the plaintiffs had no opportunity to prepare for the account given at the trial by the nurse.