OPINION OF THE COURT
 

 R.S. Smith, J.
 

 The issue here is whether Supreme Court correctly applied the rule that otherwise inadmissible evidence may become admissible where the adverse party has “opened the door” to it by offering evidence, or making an argument based on the evidence, which might otherwise mislead the factfinder
 
 (People v
 
 
 *181
 

 Melendez, 55
 
 NY2d 445 [1982];
 
 People v Rojas,
 
 97 NY2d 32 [2001]). In this case, a witness to a robbery identified defendant as the robber on two occasions before trial; the prosecution conceded that evidence as to both pretrial identifications was inadmissible. Supreme Court held that, if defendant chose to cross-examine the witness about the first of the two identifications, the door would be opened to evidence of the second. We hold that Supreme Court did not abuse its discretion.
 

 Facts
 

 A McDonald’s restaurant was robbed at gunpoint on October 10, 1998. There were three witnesses to the robbery: Alloma Stewart, the cashier, Teodora Castro, the store manager, and Penelope Gamble, a customer.
 

 On October 16, 1998, Stewart and Castro selected defendant’s picture from a number of computer images they viewed at the police station. Stewart and Castro viewed the images together, with no police officer present, and discussed their selection of defendant’s photograph with each other. Stewart testified at a pretrial hearing that when she first saw defendant’s photograph, “it was 50/50, it could have been him, it could have been other people.” After she and Castro put a piece of paper on the picture to simulate a cap, visualized defendant with a brown leather jacket, a white T-shirt and facial hair, and compared the photograph to several others, Stewart became “a hundred percent sure it was him.” Stewart and Castro reported their selection of defendant’s picture to Detective Brian Costello.
 

 Costello subsequently learned that defendant had been arrested on another charge, and was in jail. He obtained a judicial “take-out order” to remove defendant from Bikers Island and place him in a lineup, but he made no attempt to contact an attorney for defendant; the lineup took place on January 24, 1999 with no defense counsel present. Stewart picked out defendant as the robber, as did Gamble, who had not been present at the viewing of the photographs. Castro did not attend the lineup.
 

 Evidence of the photographic identifications was clearly inadmissible
 
 (see e.g., People v Caseria,
 
 19 NY2d 18 [1966];
 
 People v Baker,
 
 23 NY2d 307 [1968]). The prosecution conceded that the absence of counsel at the lineup rendered evidence of the lineup identifications inadmissible also
 
 {People v Coleman,
 
 43 NY2d 222 [1977];
 
 People v Sugden, 35
 
 NY2d 453 [1974]), and consented to an “independent source” hearing
 
 (People v Dodt,
 
 61 NY2d 408, 417 [1984]). After holding such a hearing,
 
 *182
 
 Supreme Court found that Stewart and Gamble had an independent source for their in-court identifications of defendant, and denied a motion to suppress those in-court identifications.
 

 Following the independent source hearing, defendant’s counsel made the strategic judgment that it would do defendant more good than harm if the jury learned about the arguably suggestive viewing of the photographs on October 16—as long as the jury did not also learn about the January 24 lineup. Defendant therefore requested an in limine ruling from the trial judge:
 
 [1]
 
 “If I were to question Miss Stewart or Miss Castro or bring out the fact that there was that type of identification procedure based on the photographs, would that open up the door to the lineup testimony?” Supreme Court ruled that it would, saying that to inform the jury about the photographic identification and not the lineup would be to give it “incomplete information.” Defense counsel then said that he would not ask any questions that would open the door, and he did not refer to the photographic identification at trial. Defendant was convicted and his conviction was affirmed by the Appellate Division.
 
 [2]
 
 A Judge of this Court granted defendant leave to appeal, and we now affirm.
 

 Discussion
 

 The leading case in this Court on “opening the door” is
 
 People v Melendez
 
 (55 NY2d 445 [1982]). That was a murder case in which the key prosecution witness was a man named Marrero. Marrero had previously been a suspect: a “concerned citizen”
 
 *183
 
 had told the police that both Melendez and Marrero were involved in the crime
 
 (id.
 
 at 449).
 

 The arresting officer who had spoken to the “concerned citizen” testified at trial, but of course did not relate under direct examination the informant’s hearsay statement
 
 (id.
 
 at 448). On cross-examination of the detective, Melendez’s counsel brought out that Marrero “was a suspect” at one point in the investigation
 
 (id.).
 
 On redirect, the prosecutor asked on what basis Marrero was a suspect, and the detective was permitted, over objection, to relate the “concerned citizen[’s]” detailed allegations about both Marrero (who, apparently, the informant had confused with Melendez’s codefendant) and Melendez
 
 (id.
 
 at 449-450).
 

 We held in
 
 Melendez
 
 that the cross-examination had “open[ed] the door” to some, but not all, of the hearsay testimony: it was appropriate for the detective to repeat the statements of the informant about Marrero, showing that the police suspicion of him resulted from mistaken identity, but not the informant’s accusation of Melendez
 
 (id.
 
 at 452-453). Noting that “[t]he extent of redirect examination is, for the most part, governed by the sound discretion of the trial court,” we made the following observations about when, and how far, questions asked on direct examination may open the door to otherwise inadmissible evidence on redirect:
 

 “The ‘opening the door’ theory must necessarily be approached on a case-by-case basis. As a result, this principle is not readily amenable to any prescribed set of rules. (See McCormick, Evidence [2d ed], § 57.) Nonetheless, it does have its limitations. By simply broaching a new issue on cross-examination, a party does not thereby run the risk that all evidence, no matter how remote or tangential to the subject matter opened up, will be brought out on redirect. Rather, the trial court must limit the inquiry on redirect to the ‘subject-matter of the cross-examination [which] hearts] upon the question at issue.’
 
 (People v Buchanan,
 
 145 NY 1, 24,
 
 supra.)
 
 Moreover, the court should only allow so much additional evidence to be introduced on redirect as is necessary to ‘meet what has been brought out in the meantime upon the cross-examination. ’ (6 Wig-more, Evidence [Chadbourn rev ed], § 1896, p 737; accord
 
 People v Schlessel,
 
 196 NY 476, 481,
 
 supra-,
 
 
 *184
 

 People v Lewis,
 
 18 AD2d 277, 279-280.) . . . and the trial court should normally ‘exclude
 
 all evidence which has not been made necessary by the opponent’s case in reply.’
 
 (6 Wigmore, § 1873, p 672 [emphasis in original].)”
 
 (Id.
 
 at 451, 452.)
 

 While
 
 Melendez
 
 discussed only the issue of when cross-examination questions open the door to redirect examination, we have employed a similar analysis in deciding other “opening the door” issues. For example, in
 
 People v Rojas
 
 (97 NY2d 32 [2001]), we held that the door was opened to evidence of a prior alleged crime by the defendant, a prison inmate, when he tried to show that his placement in segregation within the prison was a harsh and unjustifiable punishment that led to the conduct for which he was on trial. These cases establish that a trial court should decide “door-opening” issues in its discretion, by considering whether, and to what extent, the evidence or argument said to open the door is incomplete and misleading, and what if any otherwise inadmissible evidence is reasonably necessary to correct the misleading impression.
 

 Following the approach taken in
 
 Melendez
 
 and
 
 Rojas,
 
 we conclude that Supreme Court’s ruling here was within its discretion.
 
 [3]
 
 Defendant wanted to bring out before the jury the suggestive nature of the photographic identifications and Stewart’s initial uncertainty on viewing the photographs.
 
 [4]
 
 The point of doing this, of course, was to attack Stewart’s in-court identification of defendant as the robber—specifically, to suggest to the jury that Stewart could not confidently identify him without being helped or coached. Indeed, defendant’s counsel made that suggestion in closing argument at trial even without the help of the photographic identifications: “look at the setting. We’re here in a courtroom. I’m the defense attorney. I’m asking the
 
 *185
 
 questions. He is sitting next to me. Who else are they going to identify in this courtroom?” If evidence of the photographic identifications, but not the lineup, had been admitted, counsel would have been free to argue that the suggestive in-court identification was preceded by a suggestive viewing of photographs—while the jury remained ignorant that a lineup identification, not in any way suggestive as far as the record shows, occurred between the two.
 

 Supreme Court was well within its discretion in concluding that the course defendant wanted to take would mislead the jury, and that the jury should hear about both of Stewart’s pretrial identifications, if it heard about either of them. This is not a case where, to use the words of
 
 Melendez,
 
 the prosecution offered evidence that was “remote” or “tangential” to the subject matter the defendant brought up. The lineup evidence would have directly contradicted the impression given by the evidence about the viewing of photographs, that Stewart had always needed help to identify defendant as the robber. Thus Supreme Court had ample basis for concluding that the lineup evidence was “necessary to meet” the evidence defendant proposed to introduce.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges G.B. Smith, Ciparick, Rosenblatt, Graffeo and Read concur.
 

 Order affirmed.
 

 [1]
 

 . Defendant was tried twice because his first trial ended in a hung jury. The in limine ruling at issue here was made in connection with the second trial; the judge at the first trial made a similar ruling on a similar application.
 

 [2]
 

 . There is some confusion in the rulings of both Supreme Court and the Appellate Division. Supreme Court referred to
 
 “a
 
 lineup in which each individually I presume without reference to the other picked the defendant out of a group of similar-looking people.” Thus, the trial judge apparently thought that she was ruling on whether the door was opened to two lineup identifications. Similarly, the Appellate Division memorandum refers to “lineup identifications” in the plural (305 AD2d 116, 116 [2003]). In fact, Castro did not make a lineup identification and Gamble, who did, had no involvement in the viewing of the photographs. Only Stewart was involved in both events, and thus inquiry into the photographic identification could have “opened the door” only to evidence of Stewart’s lineup identification, not Gamble’s. Defendant did not complain of this apparent confusion below and does not rely on it here. The record indicates that defense counsel was not going to inquire about the viewing of photographs if it opened the door to any testimony about the lineup.
 

 [3]
 

 . Defendant contends that the
 
 Melendez/Rojas
 
 approach is unacceptable here, and that a different and stricter rule should be followed, because the evidence to which the door was held to be opened—Stewart’s lineup identification of defendant—was obtained in violation of defendant’s constitutional rights. Defendant did not present this argument to Supreme Court. The issue is not preserved for our review, and we do not address it.
 

 [4]
 

 . Defendant’s counsel, in presenting the motion in limine, detailed for the judge the facts he wanted to elicit: that Stewart was “only fifty percent sure,” that “she and Miss Castro . . . put a piece of paper over his head to simulate the hat. . . and imaginefd] what he would look like in a brown leather coat,” and that “ [subsequent to that they looked at a few more photographs, four or five. They imagined a few others with a brown leather coat and a piece of paper over their head[s] and went back to Mr. Massie and made a determination Mr. Massie was the perpetrator of the crime.”