Jermaine **LONEY,** Petitioner,

v.

**NEW YORK STATE DEPARTMENT OF CORRECTIONS,** Respondent.

No. 08 Civ. 7026 (VM).

United States District Court, S.D. New York.

July 8, 2009.

---

Jermaine Loney, Gowanda, NY, pro se.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Pro se petitioner Jermaine Loney ("Loney"), who is currently incarcerated at Gowanda Correctional Facility in New York ("Gowanda"), seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] Loney was convicted in New York State Supreme Court, Bronx County (the "Trial Court") of Criminal Sale of a Controlled Substance in the Third Degree, in violation of New York Penal Law § 220.39(1). The Trial Court sentenced Loney to a prison term of four-and-a-half to nine years. The State Supreme Court, Appellate Division, First Department (the "Appellate Division"), affirmed the conviction on appeal. In his petition, Loney asserts two bases for habeas relief. First, he argues that the Trial Court's closure of the courtroom during an undercover officer's testimony violated his right to a public trial under the Sixth Amendment. Second, Loney argues that the Trial Court incorrectly admitted the undercover officer's written description of the suspect into evidence. For the reasons discussed below, Loney's petition is DENIED.

## I. BACKGROUND

### A. FACTUAL HISTORY[2]

This case began with a police "buy and bust" operation in the Bronx. On February 24, 2004 at about 2:00 p.m., two New York City police officers arrived at 218th Street and Bronxwood Avenue. One of the officers, Detective Michael Rosario

---

1. The proper respondent for a prisoner's habeas petition is the petitioner's custodian, who is typically the warden of the prison in which the petitioner resides, not the prison system itself. *See Robles v. Dennison*, No. 05 Civ. 0428, 2007 WL 2187303, at *1 n. 1 (W.D.N.Y. July 30, 2007). Since Loney is petitioning pro se, however, the Court will treat his petition as if Loney properly had named Richard A. Savage, Superintendent of Gowanda, as respondent.

2. The factual and procedural summary is derived from the following documents: *People v. Loney*, No. 1548–04 (N.Y.Sup.Ct.) (order granting motion for courtroom closure) ("*Hinton* Order"); *Hinton* Hearing Transcript (Supreme Court of New York, Part 4, July 12, 2005) ("*Hinton* Tr."); Brief of Appellant, *People v. Loney*, 43 A.D.3d 726, 841 N.Y.S.2d 444 (1st Dep't 2007) ("Appellate Br."); Brief of Respondent, *People v. Loney*, 43 A.D.3d 726, 841 N.Y.S.2d 444 (1st Dep't 2007) ("Appellate Opp."); Response Brief of Appellant, *People v. Loney*, 43 A.D.3d 726, 841 N.Y.S.2d 444 (1st Dep't 2007) ("Appellate Reply"); Leave Application of Appellant *People v. Loney*, 43 A.D.3d 726, 841 N.Y.S.2d 444 (1st Dep't 2007) ("Leave Application"); Loney's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, dated July 12, 2008 ("Habeas Petition"); Respondent's Affidavit in Opposition to the Petition for Writ of Habeas Corpus, dated December 5, 2008 ("Habeas Opp."); Petitioner's Reply Motion, dated December 17, 2008 ("Habeas Reply"). Except where specifically referenced, no further citation to these sources will be made.

("Rosario"), exited his vehicle and walked towards 217th Street, where he saw a man (the "Suspect") standing in front of a building at 901 East 217th Street. Rosario radioed the description of the Suspect to the field team. The second officer, an undercover detective (the "Undercover Officer"), then got out of his vehicle and walked toward the Suspect. The Undercover Officer also transmitted a description over his one-way radio, saying: "Male black, wearing a gray and black jacket, blue hoodie, blue jeans, blue baseball cap, Yankee." (Respondent Br. 8.) The Undercover Officer approached the Suspect and asked for "one." (*Id.*) The Suspect replied by pointing at the building and saying "Let's go in here." (*Id.*) The two then entered the building.

Once inside the vestibule of the building, the Suspect pulled a plastic bag containing 1.8 grams of crack cocaine from his pants and told the Undercover Officer: "This is my last one." (*Id.*) The Suspect handed the Undercover Officer the bag, and in exchange the Undercover Officer gave him ten dollars of pre-recorded "buy money." The Undercover Officer left the building and gave Rosario a positive sign, indicating that he had just purchased drugs. As he walked back toward his car, the Undercover Officer again transmitted a description of the Suspect over a point-to-point radio. The Undercover Officer also wrote down a description of the Suspect on a piece of paper: "M/B [male black] H/H [hand to hand] Blue Jeans Yankee Cap Sweat Hoody, Beard + Mustache Med. Complexion, Grey + Black Jacket." (*Id.* at 9.) The Undercover Officer then sealed that description in an envelope along with the purchased narcotics.[3]

About one minute after the Undercover Officer purchased the drugs, the Suspect left the building, walked around the corner, and entered a cafe. Rosario radioed the field team, telling them that there had been a positive buy and that both the Undercover Officer and the Suspect had left the building. The field team then walked into the cafe, and they soon exited with a man dressed in all black. Both Rosario and the Undercover Officer saw the field team leave with the man in black, and they told the field team that the wrong man had been apprehended. Rosario entered the cafe himself, spotted Loney sitting at the bar with a bottle of beer, and pulled him out of the cafe. The Undercover Officer then radioed the field team, telling them that Loney was the man he had purchased the drugs from. Rosario searched Loney, but did not find the buy money on him. Loney was taken into custody.

On April 5, 2004, Loney was indicted by a Bronx County Grand Jury on charges of Criminal Sale of a Controlled Substance in the Third Degree and Criminal Sale of a Controlled Substance In or Near School Grounds.

## B. *PROCEDURAL HISTORY*

### 1. *The Hinton Hearing*

Before trial, the prosecution moved to close the courtroom during the testimony of the Undercover Officer. The Trial Court conducted a *Hinton* hearing to determine whether a substantial probability of prejudice to an important state interest justified closure. *See People v. Hinton*, 31 N.Y.2d 71, 334 N.Y.S.2d 885, 286 N.E.2d 265 (1972).

---

**3.** At trial, the defense contended that the description was written before, not after, the arrest.

At the hearing, the Undercover Officer testified that he had made five to six buys in the vicinity of 901 East 217th Street as part of his work with the New York City Police Department. He stated that he expected to perform further undercover work in the area, planning to return there "at any given time." (*Hinton* Tr. at 15.) The Undercover Officer added that he expected to continue to perform undercover work in the area around the Bronx Supreme Courthouse. He also testified to various precautions he took in testifying at the courthouse, such as making sure not to publicly associate with prosecutors and dressing casually. In addition, the Undercover Officer said he wanted the courtroom to be closed out of both fear for his own safety and a desire to ensure that future undercover operations were successful.

The Trial Court granted the prosecution's application to close the courtroom, stating that the record indicated that there was a substantial probability of prejudice to state interests. The Trial Court's decision resulted in the exclusion of the general public from observing the Undercover Officer's testimony, but the defendant's parents were allowed to attend, and the Trial Court offered to discuss allowing other individuals to attend on a case-by-case basis. A transcript of the Undercover Officer's testimony was also made available to the public.

### 2. *The Trial*

During the trial, both Rosario and the Undercover Officer testified as to what happened in the February 24, 2004 buy and bust operation, and both identified Loney as the man who sold the narcotics to the Undercover Officer. The defense advanced a theory of mistaken identity during the trial.

Initially, the Undercover Officer's written description of Loney was not admitted into evidence, as the Trial Court ruled that it was a prior consistent statement and was therefore inadmissable under New York State evidentiary rules. The Undercover Officer, however, was permitted to testify that he wrote down a description of the suspect. On summation, defense counsel argued that the identification testimony was not credible, as neither officer had enough time to adequately observe the suspect. The prosecution objected, arguing that in questioning the Undercover Officer's credibility, the defense had "opened the door" to allowing the written description into evidence. Over the defense's objection, the Trial Court admitted the written description. The Trial Court then read the description to the jury, and the defense counsel continued with its summation. Following summation, the Trial Court instructed the jury that the police identification testimony was admitted for a limited purpose: "as evidence of the witness's opportunity to observe and remember the alleged seller and to explain the conduct of the people to whom the information was given." (Appellate Br. 16).

During deliberations, the jury sent out four notes. One of those notes asked that the jury be permitted to re-examine the Undercover Officer's written description along with a read-back of part of his testimony. The jury was initially deadlocked, and the Trial Court delivered an *Allen* charge, asking the jurors to continue deliberating. The jury subsequently found Loney guilty of Criminal Sale of a Controlled Substance in the Third Degree.[4]

---

4. The charge of Criminal Sale of a Controlled Substance In or Near School Grounds was not submitted to the jury.

Judgment was entered against Loney on August 23, 2005. Loney was sentenced to four-and-a-half to nine years in prison.

### 3. *The Appeal*

Loney appealed the verdict to the Appellate Division, where he raised two arguments. First, he argued that the Trial Court abused its discretion in closing the courtroom during the Undercover Officer's testimony, which violated his Sixth Amendment right to a public trial. Second, he argued that the Trial Court improperly admitted a prior consistent statement into evidence because the defense summation did not open the door to the Undercover Officer's written description.

On September 20, 2007, the Appellate Division affirmed the conviction, finding that the Trial Court properly closed the courtroom and properly admitted the written description into evidence. *See People v. Loney*, 43 A.D.3d 726, 841 N.Y.S.2d 444 (1st Dep't 2007). On November 30, 2007, the New York Court of Appeals denied Loney leave to appeal. *See People v. Loney*, 9 N.Y.3d 991, 848 N.Y.S.2d 609, 878 N.E.2d 1025 (2007).

Loney filed the instant petition seeking relief under 28 U.S.C. § 2254 on July 12, 2008, advancing the same two claims he asserted in his appeal. First, he argues that the Trial Court deprived him of his Sixth Amendment right to a public trial by closing the courtroom during the Undercover Officer's testimony because the prosecution failed to meet "the substantial probability of prejudice" standard. Second, he argues that the Trial Court improperly allowed the Undercover Officer's written description into evidence because the description impermissibly bolstered the prosecution's identification testimony.

## II. *DISCUSSION*

### A. *STANDARD OF REVIEW*

As an initial matter, the Court is mindful that Loney is proceeding pro se, and that his submissions should thus be held to "less stringent standards than formal pleadings drafted by lawyers." *Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir. 1993) (*quoting Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)). Moreover, when a plaintiff brings a case pro se, the Court must construe his pleadings liberally and interpret them "to raise the strongest arguments that they suggest." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996) (*quoting Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)). Still, pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Boddie v. New York State Div. of Parole*, 285 F.Supp.2d 421, 426 (S.D.N.Y.2003) (*quoting Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983)).

Federal habeas review of state court decisions is governed by the standard set forth in the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §§ 2241–2255. AEDPA provides that

> a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a). "Errors of state law are thus not subject to federal habeas review." *Thurman v. Allard*, No. 01 Civ. 8746, 2004 WL 2101911, at *11 (S.D.N.Y. Sept. 22, 2004) (*citing Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)). "[I]t is not the province of a federal habeas court to reexamine

state-court determinations on state-law questions." *Estelle,* 502 U.S. at 67–68, 112 S.Ct. 475. In contrast, a petitioner must demonstrate that his conviction resulted from a state court decision that violated federal law. *See id.* at 68, 112 S.Ct. 475.

■ Not every violation of federal law will warrant the issuance of a writ of habeas corpus, however. *See Thurman,* 2004 WL 2101911, at *11. AEDPA further provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" established federal law if the state court arrives at a conclusion on a question of law that is opposite to that reached by the Supreme Court, or if the state court adjudicates essentially the same facts as a prior Supreme Court case but reaches an opposite result. *See Williams v. Taylor,* 529 U.S. 362, 405–6, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (citations omitted). A state court decision is an "unreasonable application" of established federal law if (1) the state court correctly identifies the relevant legal principle but unreasonably applies it to a set of facts; (2) the state court unreasonably extends an existing principle to a new context where it should not apply; or (3) the state court refuses to extend an

existing principle to a context where it should be extended. *Id.* at 407, 120 S.Ct. 1495. Furthermore, any factual determination made by the state court must be presumed correct unless the petitioner can prove otherwise by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

## B. *PROCEDURAL REQUIREMENTS*

Before considering the merits of a habeas petition under AEDPA, the Court must first determine whether the petition meets certain procedural requirements. The petition must have been filed on time, the decision in state court must not have been grounded primarily on state procedural rules, and each claim must have been exhausted.

### 1. *Timeliness*

Under 28 U.S.C. § 2244(d)(1), a one-year limitation period applies to the filing of petitions by state prisoners seeking federal habeas corpus review. This period runs from the date on which a petitioner's conviction becomes final on direct review, or the expiration of time to seek appeal. *See id.*

### 2. *State Procedural Grounds*

■ In general, a federal habeas court may not review a state court decision if the holding "rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Federal review is precluded when the state court's decision explicitly and unambiguously relies only on substantive or procedural grounds that derive from state law. *See Fama v. Commissioner of Corr. Servs.,* 235 F.3d 804, 809–10 (2d Cir.2000). If the highest state court to consider a claim based on federal law reaches its

decision on the merits, then any bar to federal review is removed. *See Ylst v. Nunnemaker,* 501 U.S. 797, 801, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (*citing Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)).

### 3. *Exhaustion*

 In order for the Court to consider the merits of a federal rights habeas claim, that claim must have been exhausted in state court. *See* 28 U.S.C. §§ 2254(b) & (c). A claim has been exhausted if it was fairly presented in state courts, thereby giving the state the "opportunity to pass upon and correct" alleged violations of federal rights. *Duncan v. Henry,* 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (*quoting Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)). A petitioner need not have cited "book and verse of the federal Constitution" in his claim in state court for the claim to have been exhausted. *Picard,* 404 U.S. at 278, 92 S.Ct. 509. Instead, a petitioner may have fairly presented his claim to state courts through

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye v. Attorney Gen. of the State of N.Y.,* 696 F.2d 186, 194 (2d Cir.1982).

### 4. *Application*

Loney's Petition meets the timeliness requirement because his July 2008 filing falls within the one-year time period that began to run when Loney's time to petition for a writ of certiorari expired in February 2008. The Appellate Division did not rest its decision on state procedural grounds; thus federal review is not precluded for that reason.

The Court finds that Loney's Sixth Amendment claim was exhausted because the claim was decided on the merits by the Appellate Division. However, the Court finds that the improper admittance of evidence claim was not exhausted to the extent that it rests on federal constitutional grounds, as discussed further below.

## C. *SIXTH AMENDMENT CLAIM*

██ Loney asserts that his right to a public trial under the Sixth Amendment was violated when the Trial Court closed the courtroom during the Undercover Officer's testimony. The Court disagrees.

The Sixth Amendment states: "In all criminal prosecutions, the accused shall enjoy a right to a speedy and public trial...." U.S. Const. amend. VI. The Supreme Court has long recognized that a public trial aims to promote a fair hearing for the defendant.

> The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions.

*In re Oliver,* 333 U.S. 257, 270 n. 25, 68 S.Ct. 499, 92 L.Ed. 682 (1948) (*quoting* Thomas Cooley, *Constitutional Limitations,* 647 (8th ed. 1927)).

 Nevertheless, the right to a public trial is not absolute. *See Waller v. Georgia,* 467 U.S. 39, 45, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984). The Court in *Waller* described a four-part test that must be met for a courtroom closure:

[T]he party seeking to close the proceeding must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.

*Id.* at 48, 104 S.Ct. 2210. Due to the difficulty of proving harm as a result of a courtroom closure, courts must assume that the defendant was prejudiced if the closure was improper. *See id.* at 50 n. 9, 104 S.Ct. 2210.

*Waller* emphasized the need for specificity in justifications for courtroom closures. In finding that the closure of a suppression hearing was unjustified, *Waller* noted that the trial court was not specific about whose privacy rights might be infringed, nor did the trial court describe how these rights might be infringed. *Id.* at 48, 104 S.Ct. 2210. The need for specificity requires that the officer testify to facts that tend to support his or her fear of harm. *See Brown v. Artuz,* 283 F.3d 492, 501 (2d Cir.2002). In an en banc rehearing on three unrelated habeas cases, the Second Circuit found that courtroom closure was appropriate in all three cases because the undercover officers planned to return to the neighborhood of the arrests to do further undercover work, and that the officers defined those neighborhoods "with particularity." *Ayala v. Speckard,* 131 F.3d 62, 72 (2d Cir.1997) (en banc). Defining the expected time of return to the neighborhood also contributes to the needed specificity. *See Artuz,* 283 F.3d at 496 (observing that the undercover officer testified that he planned to return to the area of the arrest the day after the hearing); *Ayala,* 131 F.3d at 64–65 (noting that in one of the cases under review, the undercover officer stated he planned to be in the area over the next six months, while in another case the undercover officer was continually working in the area).

In addition, courts should consider the extent of the closure in analyzing the first prong under *Waller.* The Second Circuit has interpreted *Waller* as calling for a more lenient standard in cases of partial closures by balancing the extent of the closure with the importance of the state's interest: "After all, a word like 'overriding' is really not a calibrated measure of the gravity of an interest; it reflects a conclusion that a particular interest asserted, together with the likelihood of risk to that interest, is sufficient to justify the degree of closure sought." *Ayala,* 131 F.3d at 70.

Here, the Undercover Officer testified with sufficient specificity such that the Trial Court's decision did not constitute an unreasonable application of federal law. The Undercover Officer testified that he had made five or six buys in the vicinity of 901 East 217th Street and had also performed undercover work near the courthouse, adding that he planned to continue to work undercover in both areas. He further testified to precautions he took to ensure his safety, such as not speaking with attorneys and dressing casually while in the courthouse. The Undercover Officer did not specifically say when he expected to return to the area, testifying he would be in the vicinity "at any given time". (*Hinton* Tr. at 15.) However, the Second Circuit has never held that an officer must specifically identify when he plans to return to the area of the arrest for undercover work.

Moreover, the closure was limited: the courtroom was closed only for the Undercover Officer's testimony, the defendant's family was allowed to attend, the Trial Court was willing to allow other acquaintances of the defendant to attend upon

request, and the transcript of the testimony was publicly available. The limited scope of the closure can be taken into account under *Waller*. The Court finds that the Trial Court reasonably applied federal law regarding the first prong of the *Waller* test.[5] The limited closure also satisfies the second prong of the test, in that the closure was no broader than necessary.

▪ The Court also finds that it was not unreasonable for the Trial Court to conclude that the latter two prongs of the *Waller* test were met. During the *Hinton* hearing, the Trial Court did not explicitly consider an alternative to a partial closure of the courtroom. However, a partial closure is in itself an alternative to full closure. *See Ayala*, 131 F.3d at 71. The Trial Court is not required to consider, sua sponte, an alternative to an alternative; it is the obligation of the party objecting to the closure to suggest other options in cases of partial closures. *See id.* Since the Trial Court instituted only a partial closure and the defense did not suggest any further alternatives, the Court finds that the third prong is satisfied.

▪ Finally, the fourth prong's requirement of adequate findings is met if the trial judge grounds his reasoning on facts contained in the record that are sufficient to support the partial closure. *See Brown v. Kuhlmann*, 142 F.3d 529, 539 (2d Cir.1998). Here, the Trial Court referred to the Undercover Officer's expected return to the vicinity of arrest and his fear for his own safety in making its ruling, thereby making adequate findings. (*Hinton* Order 3.) Given that the four prongs of the *Waller* test are met, the Court holds that the Trial Court did not unreasonably apply federal law regarding Loney's Sixth Amendment claim.

### D. IMPROPER ADMITTANCE OF EVIDENCE CLAIM

Loney further claims that the Trial Court violated New York State law in allowing the prosecution to present a written description of the defendant to the jury. To the extent that this claim relies on state-law principles, it is not cognizable on federal habeas review. *See, e.g., Estelle*, 502 U.S. at 67–68, 112 S.Ct. 475 (1991) (stating that "it is not the province of a federal habeas court to reexamine state-court determinations of state-law questions"). Because Loney is a pro se petitioner, however, the Court interprets his claim as alleging a violation of due process under the Fourteenth Amendment of the federal Constitution and will analyze the claim as such.

▪ However, interpreting Loney's claim as an allegation of a due process violation does not save Loney's petition, as the Court finds that the due process claim has not been exhausted. As discussed above, in order for a constitutional claim to have been exhausted a petitioner need not have cited "book and verse" of the federal Constitution in state court. *Picard*, 404 U.S. at 278, 92 S.Ct. 509. A petitioner may have exhausted his claim in state court by: 1) relying on federal cases; 2) relying on state cases employing constitutional analyses; 3) asserting a claim in a particular fashion, thereby calling to mind a specific right of the Constitution, or 4) alleging a pattern of facts that is well within the mainstream of Constitutional

---

5. In granting the prosecution's request to close the courtroom, the Trial Court did not explicitly refer to *Waller*, but instead relied on state court decisions that used the *Waller* framework. (*See Hinton* Tr. at 18–19, 24–25 (discussing *People v. Martinez*, 82 N.Y.2d 436, 604 N.Y.S.2d 932, 624 N.E.2d 1027 (1993); *People v. Ramos*, 90 N.Y.2d 490, 662 N.Y.S.2d 739, 685 N.E.2d 492 (1997))).

litigation. *See Daye*, 696 F.2d at 194. Loney clearly did not quote book and verse of the federal Constitution because the only mention of the Constitution in his appellate and reply briefs regarding the evidentiary claim was the description of the "non-constitutional," New York state-law standard for harmless error. (Appellate Br. 41).

Loney also does not meet any of the four prerequisites described in *Daye*. His briefs do not mention a single federal case regarding his evidentiary claim. In addition, the state law cases he cites do not discuss the federal Constitution. (*See* Appellate Br. 30–43; Appellate Reply 10–11, (*citing People v. Massie*, 2 N.Y.3d 179, 777 N.Y.S.2d 794, 809 N.E.2d 1102 (2004); *People v. Whipple*, 97 N.Y.2d 1, 734 N.Y.S.2d 549, 760 N.E.2d 337 (2001); *People v. McDaniel*, 81 N.Y.2d 10, 595 N.Y.S.2d 364, 611 N.E.2d 265 (1993); *People v. McClean*, 69 N.Y.2d 426, 515 N.Y.S.2d 428, 508 N.E.2d 140 (1987); *People v. Melendez*, 55 N.Y.2d 445, 449 N.Y.S.2d 946, 434 N.E.2d 1324 (1982); *People v. Davis*, 44 N.Y.2d 269, 405 N.Y.S.2d 428, 376 N.E.2d 901 (1978); *People v. Alicea*, 37 N.Y.2d 601, 376 N.Y.S.2d 119, 338 N.E.2d 625 (1975); *People v. Olsen*, 34 N.Y.2d 349, 357 N.Y.S.2d 487, 313 N.E.2d 782 (1974); *People v. Singer*, 300 N.Y. 120, 89 N.E.2d 710 (1949); *Crawford v. Nilan*, 289 N.Y. 444, 46 N.E.2d 512 (1943); *People v. Jimenez*, 102 A.D.2d 439, 477 N.Y.S.2d 170 (1st Dep't 1984); *People v. Bolden*, 82 A.D.2d 757, 440 N.Y.S.2d 202 (1st Dep't 1981); *People v. Lediard*, 80 A.D.2d 237, 438 N.Y.S.2d 540 (1st Dep't 1981))).[6] Loney's appellate briefs do not assert a claim in particular terms that call to mind a specific constitutional right; unlike the petitioner in *Daye*, Loney did not

claim that the trial court deprived him of his fundamental right to a fair trial. *See Daye*, 696 F.2d at 189.

Finally, the Court is unaware of any cases that suggest that an evidentiary dispute over an undercover police officer's written description is in the mainstream of constitutional litigation. District courts in this circuit have reached a similar conclusion, finding that disputes over the admittance of an alleged prior consistent statement are not generally viewed as a constitutional claims. *See, e.g., Warren v. Conway*, No. CV–07–4117, 2008 WL 4960454, at *21 (E.D.N.Y. Nov. 18, 2008); *Rosario v. Walsh*, No. 05 Civ. 2684, 2006 WL 1431410, at *16 (S.D.N.Y. May 25, 2006); *Porter v. Greiner*, No. CV–00–6047, 2005 WL 3344828, at *12 (E.D.N.Y. Nov. 18, 2005).

▮▮▮▮ Even if the Court were to find that Loney had exhausted this claim, and even if the Court were to further accept Loney's assertion that the state court erred in allowing the evidence to be admitted, the Court would still find that the admission of this evidence did not violate due process. The standard for a due process violation regarding an evidentiary claim is a high one; a court should ask "whether the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it. In short it must have been 'crucial, critical, highly significant....'" *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985) (*quoting Nettles v. Wainwright*, 677 F.2d 410, 414–15 (5th Cir.1982)). Here, the admitted evidence was used to support

---

**6.** The only case that Loney cites in the Appellate Brief that discusses the federal Constitution is *People v. Crimmins*, 36 N.Y.2d 230, 367 N.Y.S.2d 213, 326 N.E.2d 787 (1975). How-

ever, the Appellate Brief cites to the non-constitutional standard discussed in the case, rather than the constitutional standard.

the claim that one of the two main witnesses had time to observe Loney; it was not used as evidence that directly went to the question of Loney's guilt. The Court would therefore conclude that the evidence was not sufficiently material to provide the basis of conviction, and its admission did not violate due process.

### III. ORDER

For the reasons discussed above, it is hereby

**ORDERED** that the petition (Docket No. 1) of petitioner Jermaine Loney for a writ of habeas corpus is DENIED.

As Loney has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); *Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 111–13 (2d Cir.2000).

The Clerk of the Court is directed to withdraw all pending motions and to close this case.

**SO ORDERED.**