People v Watts (2019 NY Slip Op 07426)





People v Watts


2019 NY Slip Op 07426


Decided on October 16, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on October 16, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
SHERI S. ROMAN
ROBERT J. MILLER
VALERIE BRATHWAITE NELSON, JJ.


2013-11049
 (Ind. No. 2219/10)

[*1]The People of the State of New York, respondent,
v
Simon Watts, appellant.


Barket Epstein Kearon Aldea & LoTurco, LLP, Garden City, NY (Donna Aldea and Danielle Muscatello of counsel), for appellant.
John M. Ryan, Acting District Attorney, Kew Gardens, NY (John M. Castellano, Johnnette Traill, and Nancy Fitzpatrick Talcott of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (Michael Aloise, J.), rendered November 6, 2013, convicting him of course of sexual conduct against a child in the second degree (three counts), sexual abuse in the first degree (two counts), forcible touching, and endangering the welfare of a child (five counts), upon a jury verdict, and imposing sentence.
ORDERED that the judgment is reversed, on the law, and the matter is remitted to the Supreme Court, Queens County, for a new trial.
In 2010, the defendant, a former public school teacher of third- and fourth-grade children, was charged with committing various sexual crimes against five of his students. At a pretrial conference, the People indicated that they would not be introducing evidence of certain alleged uncharged complaints made against the defendant by additional students. The People further argued that the defendant should be precluded from presenting a "defense that the non-charged cases were not charged for any reasons of any credibility issues or any lack of evidence issues."
Prior to jury selection, the Supreme Court was advised that the defendant and the school district where he had been employed had been the subjects of civil actions commenced by three of the complainants involved in the instant criminal action. The People moved to preclude the defendant from mentioning the civil actions at the instant criminal trial. The People asserted that, if the defendant made inquiries regarding the civil actions, "the witnesses should be allowed to discuss the fact that the reason they brought the [civil] suit[s] is because this defendant had done it before and the school was on notice, not just that he did it on these particular occasions." Defense counsel later objected, stating, "I don't believe there's any connection between crossing the witness on credibility of the civil suit" and whether such cross-examination "opens the door to the prior bad acts." The court ruled, "[i]f [the defendant] choose[s] to bring it up on cross-examination, I will allow [the People], on redirect, to explore any factor that's the impetus for the lawsuit" (emphasis added).
During her opening statement, defense counsel mentioned that some of the [*2]complainants had "lawyers" and "lawsuits." Further, when cross-examining one of the complainants, defense counsel inquired if the complainant had a lawyer for "a case about this." Thereafter, over objection and a motion for a mistrial by the defendant, the Supreme Court permitted the People to elicit from that complainant's mother that she had called a lawyer in relation to a civil action because the principal of the school told her that he "knew about something going on like two years ago" and, upon reading newspapers, she learned that, in 2005, the defendant was "molesting two little girls in another school."
During the cross-examination of a second complainant, defense counsel asked that complainant if she had a "civil case." Subsequently, responding to questions posed by both the People and the Supreme Court, that complainant's grandmother testified that she had commenced a civil action after reading a newspaper article about this case.
In addition, the People were permitted to elicit from another witness that, following an "inappropriate touch assembly at the school," eight more complaints were made regarding the defendant. This witness further stated that "definitely over 10" children came forward with complaints relating to the defendant.
The defendant was convicted of course of sexual conduct against a child in the second
degree (three counts), sexual abuse in the first degree (two counts), forcible touching, and endangering the welfare of a child (five counts).
Contrary to the People's contention, the defendant preserved his challenge to the legal sufficiency of the evidence supporting the convictions of sexual abuse in the first degree and forcible touching (see CPL 470.05[2]). Viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620, 621), we find that it was legally sufficient to establish the defendant's guilt of those crimes beyond a reasonable doubt (see People v Danielson, 9 NY3d 342, 349). Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]; People v Danielson, 9 NY3d at 348-349), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383, 410; People v Bleakley, 69 NY2d 490, 495). Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the evidence (see People v Romero, 7 NY3d 633).
The defendant contends, inter alia, that the Supreme Court's evidentiary ruling that any mention by defense counsel during opening statement or elicitation of testimony regarding the civil action would open the door for the prosecutor to explore "any factor that [was] the impetus for the lawsuit" erroneously permitted the introduction of highly prejudicial alleged uncharged complaints and deprived him of a fair trial. We agree with the defendant that the judgment must be reversed and the matter remitted to the Supreme Court, Queens County, for a new trial. As correctly contended by the defendant, he did not open the door to the evidence regarding the alleged uncharged complaints by multiple children against him. The Court of Appeals has recognized that a party who simply broaches a new issue on cross-examination does not thereby run the risk that all evidence, no matter how remote or tangential to the subject matter opened up, will be brought out on redirect (see People v Melendez, 55 NY2d 445, 452). "Where . . . the opposing party opens the door on cross-examination to matters not touched upon during the direct examination, a party has the right on redirect to explain, clarify and fully elicit [the] question only partially examined on cross-examination" (id. at 451 [internal quotation marks omitted]). However, the court should only allow so much additional evidence to be introduced on redirect as is necessary to meet what has been brought out upon the cross-examination, and the court should normally exclude all evidence which has not been made necessary by the defendant's cross-examination (see id. at 452), particularly where the subject matter of the People's inquiry concerns prejudicial evidence of prior uncharged criminal acts (see People v Wallace, 31 AD3d 1041, 1044). "[A] trial court should decide door-opening' issues in its discretion, by considering whether, and to what extent, the evidence or argument said to open the door is incomplete and misleading, and what if any otherwise inadmissible evidence is reasonably necessary to correct the misleading impression" (People v Massie, 2 NY3d 179, 184).
Here, defense counsel asked questions regarding the civil actions in an attempt to impeach credibility and establish that a motivation for some of the complainants' testimony against the defendant was monetary gain or a pecuniary interest. This line of inquiry did not open an unfettered passageway for the People to elicit extensive and prejudicial evidence regarding alleged uncharged complaints. The extraneous testimony of alleged uncharged complaints did not serve to explain or clarify whether the civil actions provided certain complainants with a financial incentive to testify.
Moreover, the admission of evidence of alleged uncharged complaints violated the basic principle underlying Molineux and its progeny that "a criminal case should be tried on the facts and not on the basis of a defendant's propensity to commit the crime charged" (People v Rojas, 97 NY2d 32, 36; see People v Molineux, 168 NY 264). "Evidence of similar uncharged crimes has probative value, but as a general rule it is excluded for policy reasons because it may induce the jury to base a finding of guilt on collateral matters or to convict a defendant because of his past" (People v Alvino, 71 NY2d 233, 241; see People v Arafet, 13 NY3d 460, 465). This "rule reflects the importance of an accused being judged only on relevant, probative evidence, rather than on the basis of propensity to commit crime" (People v Gillyard, 13 NY3d 351, 355). The high risk of unfair prejudice to the defendant as a result of the jury hearing that more than 10 students allegedly made complaints against him outweighed any potential probative value of such evidence. Accordingly, on this record, we hold that the Supreme Court's ruling deprived the defendant of his right to a fair trial.
Because the defendant was deprived of his right to a fair trial, the error cannot be deemed harmless. The Court of Appeals has explained that "if in any instance, an appellate court concludes that there has been such error of a trial court, such misconduct of a prosecutor, such inadequacy of defense counsel, or such other wrong as to have operated to deny any individual defendant his fundamental right to a fair trial, the reviewing court must reverse the conviction and grant a new trial, quite without regard to any evaluation as to whether the errors contributed to the defendant's conviction" (People v Crimmins, 36 NY2d 230, 238). "The right to a fair trial is self-standing and proof of guilt, however overwhelming, can never be permitted to negate this right" (id. at 238).
As the matter is being remitted for a new trial, we also review the defendant's contention that the trial judge should not have participated as a reader when the jury asked for a read-back of testimony. We agree with the defendant's contention. When, during a read-back of testimony, a trial judge assumes the role of a witness or inquiring counsel, he or she may unwittingly and erroneously convey to the jury that the court is aligned with the party or counsel whose role the court has assumed in the read-back (see People v Brockett, 74 AD3d 1218, 1221; see generally People v De Jesus, 42 NY2d 519). Accordingly, this practice should be avoided.
The defendant's remaining contentions either are without merit or need not be reached in light of our determination.
RIVERA, J.P., ROMAN, MILLER and BRATHWAITE NELSON, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court