## STATE v. HARRY JOUPPIS.[1]

October 29, 1920.

No. 21,819.

**Rape — exclusion of testimony concerning threat.**

> Defendant was accused of the crime of carnal knowledge of a female child. At the trial, after he had rested but before the prosecution had begun its rebuttal, he asked leave to reopen his case, and was permitted to call a witness by whom he offered to prove that, before the prosecution was instituted, the witness had been asked by the prosecutrix and her mother to make a demand on the defendant for money with the threat that, unless defendant paid it, they would bring this charge against him, although the charge was untrue. *Held* that the exclusion of this testimony was reversible error.

Defendant was indicted by the grand jury of Hennepin county charged with the crime of carnal knowledge of a female child under 14 years of age, tried in the district court for that county before Fish, J., and a jury which found him guilty as charged in the indictment. From an order denying his motion for a new trial, defendant appealed. Reversed.

*Chester L. Nichols,* for appellant.

*Clifford L. Hilton,* Attorney General, and *James E. Markham,* Assistant Attorney General, for respondent.

TAYLOR, C.

Defendant was convicted of the crime of carnal knowledge of a fe-

[1]Reported in 179 N. W. 678.

male child under the age of 14 years, and appeals from an order denying a new trial.

The principal question presented is whether the court erred in excluding the testimony of the witness, Frank Chaparas, proffered in support of the claim that the charge was false and was instigated by the mother of the girl for the purpose of extorting money from the defendant.

The girl, Minnie Lindsey, testified that the offense was committed on July 1, 1918, but that she told no one of it until January, 1919. Her mother, Mrs. Minnie Lindsey, testified that she first learned of the commission of the offense shortly before she caused the prosecution to be instituted in February, 1919. On cross-examination, the mother was asked if she had not sent her son-in-law, Frank Chaparas, to demand $500 from defendant in the summer of 1918, with the threat that unless he paid it she would claim that he had had intercourse with Minnie. Minnie was also questioned along the same lines. Both denied that anything of the kind had ever occurred. The defendant testified that he was first informed of the claim made by Minnie and her mother by Frank Chaparas in the summer of 1918, but he was not permitted to state what Chaparas had said to him. Chaparas was present throughout the trial, but defendant's attorney rested without calling him. A short recess was taken. As soon as court reconvened and before the prosecution had begun its rebuttal, defendant's attorney asked permission "to reopen defendant's main case for just a moment," to which the prosecuting attorney responded: "No objection." Frank Chaparas was then called and sworn. After a few preliminary questions which disclosed that he was a resident of Minneapolis and that his wife was a sister of Minnie, he was asked:

"I will ask you whether or not, during the latter part of the summer of 1918, you had any talk with Mrs. Minnie Lindsey, the mother, in the presence of Minnie, the daughter, with reference to your speaking to Harry Jouppis for money?"

He answered, "Yes, sir," but the answer was stricken out to permit an objection to the question. An objection was then interposed and the question was excluded. Thereupon defendant's attorney made this offer:

"The defendant offers to prove by this witness that during the latter part of the summer of 1918, the complaining witness, Minnie Lindsey,

and her mother, Mrs. Minnie Lindsey, together, told and asked the witness, Frank Chaparas, to go to the defendant, Harry Jouppis, and tell him that they wanted him to pay them five hundred dollars or they would have him arrested upon the ground that he had had intercourse with the daughter, Minnie; that at that time the mother stated that this was not the fact, but that they were going to claim that it was in order to get the money from him; that these facts were communicated to the defendant, Harry Jouppis, by the witness, Frank Chaparas."

The offer was objected to as "improper impeachment and hearsay." The court excluded it with the statement:

"I will not open the case to receive evidence of that kind after you have rested."

Defendant took an exception. The prosecution then called witnesses and presented its rebuttal.

The testimony proffered was competent and bore directly upon the credibility of the only direct testimony incriminating the defendant. In prosecutions for crimes of this nature there is seldom any direct evidence on either side except the testimony of the two parties, and, where they squarely contradict each other, as they frequently do, all the available competent evidence, tending either to corroborate or discredit the testimony of the one or the other, should be submitted to the jury to aid them in determining where the truth lies. State v. Trocke, 127 Minn. 485, 149 N. W. 944. The court is not at liberty to exclude discrediting testimony because he may deem it untrue. Whether it shall be accepted as true, or rejected as false, is for the jury to say, not the court.

Whether a party shall be permitted to reopen his case and present further evidence after he has rested, is generally within the discretion of the trial court, but refusing to reopen a case to permit the introduction of pertinent evidence upon a vital issue was held reversible error in State v. Jones, 80 Wash. 588, 142 Pac. 35; Martin v. Commonwealth, 145 Ky. 752, 141 S. W. 54; Schonberger v. Commonwealth, 86 Va. 489, 10 S. E. 713; Dickinson v. State, 3 Okl. Cr. 151, 104 Pac. 923. Where a defendant whose liberty is at stake rests, perhaps through the inadvertence of his attorney, and then, before the prosecution enters upon its rebuttal or any further proceedings are taken, asks to reopen his case and tenders material evidence, not cumulative, upon a controlling issue, and .

there is nothing to indicate any improper purpose in failing to produce such evidence earlier, we think he should be permitted to present it in furtherance of a fair trial. But if we were to concede that the court might have denied the defendant's application in the exercise of its discretion, the court did not do so. The defendant asked to open the case. The state consented. Without making any formal ruling or imposing any restrictions, the court permitted the witness to be called and sworn and to give testimony. This must be taken as opening the case for the purpose, at least, of receiving the testimony of this witness if it proved to be competent and material. We feel constrained to hold that there was no valid ground for excluding the proffered testimony, and that its exclusion was prejudicial error, for which a new trial must be granted.

The defendant also complains that the charge was argumentative and conveyed to the jury the impression that his testimony was less likely to be true than the testimony for the prosecution. The charge is not free from criticism in this respect, but the observations which tended to place defendant's testimony in a less favorable light than the testimony opposed to it are not likely to be repeated at another trial, and we deem further comment unnecessary.

The order is reversed and a new trial granted.

HALLAM, J. (dissenting).

I dissent. During the trial the witness Chaparas had been active in connection with the defense. Apparently, defendant's counsel had deliberately rested without calling him as a witness, then after a recess of the court, and, without excusing the failure to call him sooner, called him to the stand in order to offer this extraordinary bit of impeaching testimony. No oversight was claimed. In my opinion it was within the discretion of the court to refuse to reopen defendant's case in order to receive this testimony.

QUINN, J. (dissenting).
I concur in the dissent.