*3
 
 OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 The issue on this appeal is whether, when the People rest without evidence establishing an element of an offense, and the defendant moves for a trial order of dismissal on that basis, the trial court can permit the People to reopen their case and cure the omission. We conclude that reopening is permissible where the missing element is simple to prove and not seriously contested, and reopening the case does not unduly prejudice the defense. Because this rule did not, as a matter of law, preclude the trial court’s decision to let the People present limited additional evidence, we reverse the Appellate Division order and remit the matter to the Appellate Division for consideration of the facts (see, CPL 470.40 [2] [b]).
 

 On the afternoon of March 14, 1998, defendant Darwin WThipple was seen driving his pickup truck into the wall of Dutch’s Bar in the Town of Thompson. Deputy Sheriff Robert Clark arrived and asked Whipple to take a series of field sobriety tests, which Whipple failed. After his arrest, a test showed his blood alcohol content as 0.13%.
 

 Whipple was indicted under Vehicle and Traffic Law § 1192 (2) and (3), both in conjunction with section 1193 (1) (c). The first count of the indictment alleged that Whipple drove while he had a blood alcohol content in excess of 0.10%; the second count charged that he drove while intoxicated, as evidenced by his physical condition and performance on the field sobriety tests. Each count alleged that Whipple drove in a “public parking lot.”
 

 At trial, the People asked an eyewitness whether the parking lot at Dutch’s was a “public parking area,” and the witness answered in the affirmative. Deputy Sheriff Clark testified to the same effect, and defense counsel cross-examined him about this very point:
 

 
 *4
 
 “Q. Now, you said that in the general area there was a public parking lot, is that correct?
 

 “A. Yes.
 

 “Q. That’s not a public parking lot in the sense it’s owned by the government or public, that’s private property where the public would drive in and out to go to a private bar or some other business, is that correct?
 

 “A. It’s an adjoining parking lot. There’s several different businesses along that strip there.
 

 “Q. Okay. So, it’s public in that it’s open to the public, but it’s private property, is that fair to say?
 

 “A. I believe so. It is open to the public, though, yes.”
 

 Neither Deputy Sheriff Clark nor any other witness testified about the number of spaces in the parking lot before the People rested.
 

 Late in the People’s presentation of their direct case, the trial court, during a precharge conference, stated that it intended to instruct the jury on Vehicle and Traffic Law § 1192 (7), which reads:
 

 “For the purposes of this section ‘parking lot’ shall mean any area or areas of private property, including a driveway, near or contiguous to and provided in connection with premises and used as a means of access to and egress from a public highway to such premises and having a capacity for the parking of four or more motor vehicles.”
 

 Observing that this subdivision pertains to driving under the influence “upon public highways, private roads open to motor vehicle traffic and any other parking lot,” the court directed the parties’ attention to the statutory text and
 
 People v Williams
 
 (66 NY2d 659 [1985]). Defense counsel requested a chance to review the statute, while the prosecutor merely stated “That’s fine, judge.”
 

 The People rested, and Whipple rested immediately thereafter. Whipple then moved for a trial order of dismissal directed at the lack of evidence that the parking lot at Dutch’s Bar had the capacity to park four or more motor vehicles. Noting Deputy Sheriff Clark’s testimony about “other premises” that shared the same parking area as Dutch’s, the court stated
 
 *5
 
 that the People had made a prima facie case that the incident occurred in a public parking lot within the statutory definition. When the People moved to reopen their case pursuant to CPL 260.30, the court found that under this section it retained its “common law discretionary power to alter the order of proof at least up to the time the case is submitted to the jury.” It further noted that the missing testimony would be crucial to the People’s case and that granting the motion would not prejudice Whipple.
 

 Having prevailed on their motion to reopen, the People recalled Deputy Sheriff Clark and, with seven brief questions and answers, established that the parking lot at Dutch’s Bar has the capacity for more than four — “probably twenty”— vehicles and can be used for access to and from a public highway. Whipple’s cross-examination did not attempt to controvert these facts. The jury then found Whipple guilty on both counts of driving while under the influence of alcohol, and the court sentenced him to lVs to 4 years in prison.
 

 On Whipple’s appeal, the Appellate Division reversed, concluding that “while a trial court certainly has discretion in permitting witnesses to testify out of the usual order (see, CPL 260.30), that discretion does not permit the reopening of a case after a meritorious motion to dismiss for legal insufficiency following the close of all proof’ (276 AD2d 829, 830-831). The court found that the need to prove the parking lot’s capacity was not unexpected after the precharge conference, and that the case was distinguishable from cases in which motions to reopen were made to permit previously unavailable witnesses to testify or to admit stipulations or exhibits into evidence. We granted the People leave to appeal, and now reverse.
 

 Initially, we note that CPL 290.10 (1), relied on by the Appellate Division, does not resolve the issue before us. CPL 290.10 (1) provides that a trial order of dismissal may be granted if, “[a]t the conclusion of the people’s case or at the conclusion of all the evidence * * * the trial evidence is not legally sufficient to establish the offense charged therein or any lesser included offense.” Thus, the Appellate Division reasoned, dismissal is surely indicated when the People present
 
 “no
 
 evidence” to establish an element of their case (276 AD2d, at 830 [emphasis in the original]). But while CPL 290.10 (1) establishes when a defendant may bring a motion for a trial order of dismissal — and under what circumstances such a motion should succeed — it does not address whether and when the
 
 *6
 
 trial court has discretion to let a party reopen its case after that party rests but before the case is submitted to the jury.
 
 *
 
 CPL 260.30 (7), on which the People rely, is a somewhat closer fit. It provides that after the People rest but before the close of all evidence:
 

 “The people may offer evidence in rebuttal of the defense evidence, and the defendant may then offer evidence in rebuttal of the people’s rebuttal evidence. * * * In the interest of justice, the court may permit either party to offer evidence upon rebuttal which is not technically of a rebuttal nature but more properly a part of the offering party’s original case.”
 

 CPL 260.30 (7), then, permits the People to present evidence “properly a part” of their case-in-chief after resting, under some circumstances
 
 (see, e.g., People v Harris,
 
 57 NY2d 335, 345-346 [1982]). It is thus more nearly tailored to the kind of problem now before the Court, but is still not on point, as the People’s motion to reopen here occurred after Whipple rested.
 

 Nonetheless, review of CPL 260.30 has prompted us to observe that the statutory framework “is not a rigid one and the common-law power of the trial court to alter the order of proof ‘in its discretion and in furtherance of justice’ remains at least up to the time the case is submitted to the jury”
 
 (People v Olsen,
 
 34 NY2d 349, 353 [1974]). In
 
 Olsen
 
 we held that the trial court erred when it reopened the case during jury deliberations for submission of additional evidence relating to a witness’s credibility, as the danger of the jury’s according such evidence undue weight is considerable
 
 (id.,
 
 at 355;
 
 see also, People v Behling,
 
 54 NY2d 995, 996 [1981]). We distinguished that danger, however, from the “risks” associated with a determination comparable to that made by the trial court here:
 

 “The risks are not substantially increased when, upon the request of counsel, the case is reopened merely to supply a necessary element which has been overlooked. As a practical matter an element
 
 *7
 
 which has been forgotten, although technically essential, should generally be simple to prove and not hotly contested. * * * Thus, the possibility of seriously disrupting the trial process or unduly prejudicing one of the parties should not materialize”
 
 (Olsen, supra,
 
 34 NY2d, at 354).
 

 The same reasoning applies here.
 

 In this case, as in the situation we hypothesized in
 
 Olsen,
 
 the People simply forgot a technically necessary element: the number of spaces in the parking lot. This element was simple to prove, and uncontested. Indeed, before Whipple moved for a trial order of dismissal, there had been no discussion of the capacity of the parking lot, except insofar as the trial court’s reference to Vehicle and Traffic Law § 1192 (7) should have alerted the People to the text of that statute. The prosecutor’s inattention to this detail may to some degree be explained by the trial court’s reference to
 
 People v Williams (supra,
 
 66 NY2d, at 660), where the issue was not whether the parking lot had sufficient spaces but whether an apartment complex parking lot restricted to use by tenants could be considered “public.” The motion for a trial order of dismissal gave the People notice of the technical omission, and the issue now is whether, as a matter of law, a trial court may never permit the People to act on such notice — a sort of “gotcha” principle of law.
 

 Both sides, and the Appellate Division, recognize an analogy between this case and
 
 People v Hollis
 
 (255 AD2d 615,
 
 lv denied
 
 92 NY2d 1033 [1998]). In
 
 Hollis,
 
 the defendant was convicted of assaulting a peace officer. “Peace officer” was a defined term under the applicable statute, but the People referred to the victim only as a court security officer, without explaining how his job description fit within the statutory definition. The Appellate Division held that the trial court did not abuse its discretion in permitting the People to reopen in order to draw the necessary connection. Here, the Appellate Division distinguished
 
 Hollis
 
 on the ground that the People presented
 
 no
 
 evidence of the parking lot’s capacity before closing their case against Whipple
 
 (see,
 
 276 AD2d, at 830). Yet Deputy Sheriff Clark’s testimony did establish that there were “several different businesses” along the “strip” within which Dutch’s Bar had “an adjoining parking lot.” This fact is at least highly compatible with a prima facie showing that the parking lot at Dutch’s was a public parking lot under Vehicle and Traffic Law § 1192 (7). Under such circumstances, the distinction between this case and
 
 Hollis
 
 is not compelling, and we cannot say that
 
 *8
 
 the trial court was without discretion to allow the People to show that the parking lot at Dutch’s Bar indeed parks at least four vehicles.
 

 Whipple argues that permitting the People to reopen enabled them to exploit his attorney’s “work product,” the legal research on the basis of which Whipple brought his motion. If, indeed, the People had moved to reopen in order to cure some defect in their case that became discernible only after a defense motion based on research, we might agree. In this case, however, the “work product” of defense counsel consisted only of noticing a facial requirement of Vehicle and Traffic Law § 1192 (7) that was uncontested. Under such circumstances, we see no misappropriation of defense work product by the People.
 

 As the Appellate Division pointed out, the People’s motion to reopen is less justifiable here than in cases where the need to prove a particular element was unexpected or the motion was made to permit a previously unavailable witness to testify or admit a stipulation. But while a better explanation for their omission would certainly have enhanced the merit of the People’s motion, the inadequacy of their excuse does not preclude a cure as a matter of law. Leave to reopen remains, of course, a precarious dispensation upon which counsel rely at their peril. Courts, which have abundant discretion to deny such leave even to defendants (see,
 
 e.g., People v Washington,
 
 71 NY2d 916, 918 [1988];
 
 People v Escobar,
 
 36 NY2d 883, 884 [1975];
 
 People v Ventura,
 
 35 NY2d 654, 655 [1974]), have at least the same latitude to deny such motions when brought by the People. We hold only that in the narrow circumstances where, as here, the missing element is simple to prove and not seriously contested, and reopening the case does not unduly prejudice the defense, a court may, in its discretion, grant a motion to reopen.
 

 Accordingly, the order of the Appellate Division should be reversed and the case remitted to that court for consideration of the facts.
 

 Judges Smith, Levine, Ciparick, Wesley and Rosenblatt concur; Judge Graffeo taking no part.
 

 Order reversed and case remitted to the Appellate Division, Third Department, for consideration of the facts (CPL 470.25 [2]
 
 [d];
 
 470.40
 
 [2]
 
 [b]).
 

 *
 

 Whipple additionally contends that when moving to reopen their case, the People should not be subject to a more lenient standard than a defendant moving to set aside a verdict or vacate a judgment (see, CPL 330.30, 440.10 [1] [g]). The motion under review, however, did not implicate the same interests, as the jury had not yet begun to deliberate, much less arrived at a verdict.