■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DEWEY SIMS, Appellant. [868 NYS2d 832]—

Spain, J.

Defendant was convicted, following a jury trial, for participating in an August 20, 2006 armed robbery of Joshua Bell and Allen H. Everett who were in a car on South Pearl Street in the City of Albany at around 5:10 A.M. As Everett was about to get out of the stopped car, a man carrying a gun approached Bell on the driver's side of car, pointed a gun at his head and demanded money; in response, Bell turned over money, jewelry and his cell phone. A second gunman—who the People posited was defendant—approached Everett on the passenger side with a gun and demanded he empty his pockets, which he did. The victims were then forced out of the car to lay on the ground while their vehicle was searched and, during the melee, both victims were struck in the head with guns. After the gunmen fled, Everett found—on the ground by the vehicle—a prepaid cell phone which was later determined to belong to defendant.[1] Shortly thereafter, while the victims were reporting the crime to the Albany Police Department and turning over defendant's cell phone, a call came in to defendant's phone from the cell phone stolen from Bell during the robbery; Bell answered the call on defendant's phone and arranged to switch cell phones with the caller, but the caller did not show at the designated meeting site. The gunmen had worn bandanas covering their faces and

---

1. Defendant lived with his parents, and the cell phone listed defendant's parents' number under "home" and his father's cell number under "dad." Defendant's father confirmed that the cell number was defendant's.

could not be identified by the victims, who were able to describe the height and clothing of the second gunman. Defendant's accomplice was not apprehended.

A police sergeant was dispatched in a marked vehicle to the home of defendant's parents in Albany at about 7:30 A.M. and observed defendant exit a taxi cab; when defendant saw the police car, he fled into his parents' backyard and then jumped a fence, eluding police. A detective contacted defendant's parents using defendant's cell phone, and the parents eventually brought defendant to the precinct where he agreed to be questioned. After initially claiming that he had slept at his sister's apartment that evening (which the sister denied when called by the detective), and being informed that his cell phone was found at the scene, defendant confessed to participating in the robbery as the second gunman, representing that the gun he carried was not workable. His admissions were reduced to a written statement; defendant represented that he was unable to read, and the statement was read to him in the presence of two detectives, and defendant affirmed it was "the truth" and signed it. A .25 caliber semiautomatic handgun was recovered beneath leaves near the fence in his parents' backyard later that morning. Upon his convictions, defendant was sentenced to concurrent prison terms of 10 years and five years, with three years of postrelease supervision. Defendant now appeals.

Defendant's challenge to the verdict as contrary to the weight of the evidence is not convincing. While a different finding would not have been unreasonable, we have weighed the conflicting testimony and fair inferences to be drawn from the evidence and, giving deference to the jury's superior ability to assess witness credibility, we find that the verdict was well supported by the credible evidence (*see People v Bleakley*, 69 NY2d 490, 495 [1987]; *see also People v Danielson*, 9 NY3d 342, 348-349 [2007]; *People v Romero*, 7 NY3d 633, 643-644 [2006]). The pivotal issue was defendant's identity as the second gunman. The proof, strongly supporting the jury's verdict, included defendant's admissions and detailed signed statement to the police in which he admitted using an inoperable .25 caliber handgun in the robbery;[2] a handgun, later determined to be inoperable, was found in defendant's parents' yard where he had fled from the police hours after the robbery. A taxi driver identified defendant—who the police observed fleeing—as the person he dropped off at

---

2. The People only needed to prove that defendant or his accomplice "[d]isplay[ed] what appear[ed] to be" a gun (Penal Law § 160.10 [2] [b]) under the first robbery count, not that it was operable (*see People v Lopez*, 73 NY2d 214, 219-223 [1989]).

defendant's parents' home. Further, defendant's cell phone was recovered next to the car immediately after the robbery, and that phone was called from Bell's stolen cell phone within 10 to 15 minutes after the robbery by a person demanding the return of defendant's phone.

As for the descriptions given of defendant, while there was not uniformity, the discrepancies raised a credibility issue for the jury and did not compel crediting defendant's misidentification defense given the other strong evidence establishing defendant's identity as the second gunman. That the gun could not be conclusively linked to the robbery and the victims could not identify defendant did not undermine the strong proof connecting defendant to this crime. The testimony of defendant's parents, which was not consistent, that defendant slept at his sister's house that night and had lost his cell phone at a club the prior night, was not credible, and both conceded that he went to the police station interview voluntarily. In light of the foregoing, we do not find that the verdict was contrary to the weight of credible evidence.

Next, defendant contends that his right to present a complete defense was violated when County Court denied defense counsel's request, opposed by the People, to allow defendant—during the People's case—to "stand before the jury so they can [gauge] his height and weight." The request came during the cross-examination of Bell, the People's first witness. While the denial of defendant's particular request to display defendant preserved an issue of law as to that evidentiary ruling (*see* CPL 470.05 [2]), the constitutional claims raised for the first time on appeal are unpreserved. In any event, the defense's request for a body display by defendant was made out of order, during the People's presentation of evidence (*see* CPL 260.30 [4], [5]), and we discern no abuse of discretion in the court's denial at that point in the trial (*see People v Whipple,* 97 NY2d 1, 6 [2001]; *cf. People v Terry,* 309 AD2d 973, 974-975 [2003]). The defense never renewed the request during its presentation of proof, as it could have, and the court never intimated that defendant would be required to take the stand in order to present this nontestimonial evidence (*cf. People v Allen,* 140 AD2d 229, 231 [1988], *lv denied* 72 NY2d 1043 [1988]). Accordingly, no error occurred.

Finally, despite defendant's age (17), failed education and lack of a violent criminal history, we do not find that his sentence was unduly harsh or excessive. It was significantly less than the maximum authorized sentence and, given defendant's active role in this violent crime, we perceive no reason to reduce the sentence in the interest of justice.

Cardona, P.J., Malone Jr. and Stein, JJ., concur. Ordered that the judgment is affirmed.