# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A15-0708

State of Minnesota,
Respondent,

vs.

Quintin Lynn Thomas,
Appellant.

**Filed July 5, 2016**
**Affirmed**
**Bratvold, Judge**

St. Louis County District Court
File No. 69DU-CR-14-1834

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Gunnar B. Johnson, Duluth City Attorney, Joanne R. Piper-Maurer, Assistant City Attorney, Marcus E. Jones, Assistant City Attorney, Duluth, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Charles F. Clippert, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Johnson, Judge; and Bratvold, Judge.

## S Y L L A B U S

I.     Under Minnesota Rule of Criminal Procedure 26.03, the district court has discretion to grant or deny the state's motion to reopen its case to offer additional evidence where the motion is made after the state has rested without proving an element of its prima facie case and the defense has moved for judgment of acquittal.

II.     In exercising its discretion on a motion to reopen, the district court should consider (a) when the motion is made, (b) whether the evidence is material, not cumulative, and concerns a controlling issue, and (c) whether the state had an improper purpose for failing to offer the evidence earlier.

## O P I N I O N

**BRATVOLD**, Judge

Appellant, Quintin Thomas, appeals his conviction of second-degree driving while impaired, arguing that the district court abused its discretion by allowing the state to reopen its case on a motion made after the state had rested and the defense had moved to acquit based on a deficiency in the state's prima facie case. Thomas also argues that the district court improperly instructed the jury that the police officer who testified regarding the operation of a breath-testing machine was testifying as an expert. Because we conclude that the district court did not abuse its discretion in allowing the state to reopen its case or by instructing the jury as it did, we affirm Thomas's conviction.

## FACTS

On May 16, 2014, after attending a funeral, Thomas went to the Players Sports Bar in Duluth. While at the bar, Thomas had three to four Crown Royals with a beer chaser. Thomas, who does odd jobs for a living, received a telephone call around midnight, while still at the bar. Thomas then walked six blocks to make repairs on a Ford F250 pickup. After he finished the repairs, his pre-arranged ride did not come, and his cell phone died. Thomas stood for some time outside the pickup. Because it was cold—only 39 degrees— Thomas entered the pickup, laid down across the bench seat in front, and fell asleep. Hours

later, he awoke and was cold, so he turned on the ignition and heater and fell asleep in the driver's seat.

Around 4:00 a.m., a police officer noticed the pickup with its engine running, approached, and asked Thomas to do field sobriety tests. The police officer concluded that Thomas failed the field-sobriety tests, arrested him, and administered a breath test at the station. His alcohol concentration registered at 0.16.

The state charged Thomas with two counts of gross-misdemeanor driving, operating, or being in physical control of a motor vehicle while impaired (one predicated on an alcohol concentration of 0.08 measured within two hours and the other on being under the influence of alcohol). Both counts were enhanced to second-degree offenses because of two prior qualified incidents: a 2007 Minnesota conviction for driving under the influence of alcohol and a 2006 Wisconsin conviction for operating a vehicle while intoxicated. *See* Minn. Stat. § 169A.25, subd. 1(a) (2012).

On the first day of trial and outside the jury's presence, Thomas declined to stipulate to the prior convictions. The defense made a record of this decision, noting that Thomas wanted to require the state to "prove the priors" and that Thomas understood the state could do so by offering certified copies of the prior convictions. The parties stipulated to some redactions to the state's certified records.

During trial, there was no dispute about Thomas's claim that he never drove or operated the pickup. The state argued it needed to prove that Thomas was impaired while in physical control of a motor vehicle. The state presented its case-in-chief, eliciting testimony from two police officers regarding Thomas's conduct and alcohol concentration.

3

After this testimony concluded, the state rested without offering the certified copies of the prior convictions. Outside the jury's presence, Thomas moved for judgment of acquittal, arguing that the state failed to offer proof on two aggravating factors needed to prove second-degree DWI. The district court took a short recess then heard argument from both sides, during which the state asked to reopen its case. Thomas opposed the state's request.

The district court denied Thomas's motion for judgment of acquittal at the same time that it granted the state's motion to reopen. Relying on caselaw and the relevant rule of criminal procedure, the district court determined that it had discretion to allow the state to reopen its case and present the omitted evidence. The district court also found that the missing evidence was not a surprise to the defense, nor was it cumulative; the missing evidence involved a controlling issue; and, the state did not have an improper purpose. Also, the district court noted that, even if Thomas's motion prevailed, the state could likely amend to a misdemeanor charge.

The state then offered a certified conviction record and Thomas's certified driving record into evidence, which the court received. The state rested again. Outside the jury's presence, Thomas made a record of what he would have done if the district court had denied the state's motion to reopen and allowed the amendment to a misdemeanor, saying he would not have testified. As a result of the ruling, however, Thomas testified about the events of the evening. Based on this testimony, Thomas's attorney argued in closing that Thomas's options that night were "severely limited," he did the right thing by not driving, and he was trying to keep warm on a cold night.

4

Before submitting the case to the jury, the state dismissed the charge of second-degree driving while impaired. The jury found Thomas guilty of second-degree operating and/or being in physical control of a motor vehicle with an alcohol concentration of 0.08 or more within two hours. This appeal followed.

## ISSUES

I.   Did the district court have discretion to grant the state's motion to reopen that was made after the state had rested without proving an element of its prima facie case and the defendant had moved for acquittal?

II.  Did the district court abuse its discretion in instructing the jury about expert testimony after a police officer's testimony about breath-test results had been admitted without objection?

## ANALYSIS

### I.   Motion to Reopen

Thomas argues that the district court erred, first, in deferring its decision on his motion for a judgment of acquittal. Thomas is correct that it is error to defer ruling on a motion to acquit following the state's case-in-chief. *See* Minn. R. Crim. P. 26.03, subd. 18(2); *State v. Penkaty*, 708 N.W.2d 185, 208 (Minn. 2006). The transcript, however, shows that the district court denied Thomas's motion at the same time it granted the state's motion to reopen. Thus the district court did not err.

Thomas's second argument is that the district court erred in allowing the state to reopen its case because the state rested after failing to offer evidence of an essential element of its case. This issue appears to be one of first impression for Minnesota. Thomas urges

5

this court to follow the reasoning stated in *State v. Allen*, 533 A.2d 559 (Conn. 1987). The state does not address *Allen* and instead argues that the district court should be affirmed under existing Minnesota caselaw and the relevant rule of criminal procedure.

This court reviews "the disposition of a party's request to reopen its case after the party has rested under an abuse-of-discretion standard." *State v. Caine*, 746 N.W.2d 339, 352–53 (Minn. 2008); *see also State v. Jouppis*, 147 Minn. 87, 89, 179 N.W. 678, 679 (1920) ("Whether a party shall be permitted to reopen his case and present further evidence after he has rested, is generally within the discretion of the trial court . . . ."). On the other hand, "[w]e review de novo the district court's interpretation of the criminal rules of procedure." *In re Welfare of T.C.J.*, 689 N.W.2d 787, 790 (Minn. App. 2004), *review dismissed* (Minn. Jan. 26, 2005).

District courts have discretion in managing trials. *State v. Blom*, 682 N.W.2d 578, 609 (Minn. 2004). This discretion includes the mode and order of evidence presentation. Minn. R. Evid. 611(a). The district court's discretion to allow a party to reopen its case after resting is set out in the Minnesota Rules of Criminal Procedure, as follows: "The prosecutor may rebut the defense evidence, and, the defense may rebut the prosecutor's evidence. In the interests of justice, the [district] court may allow any party to reopen that party's case to offer additional evidence." Minn. R. Crim. P. 26.03, subd. 12(g).

Minnesota caselaw shows that any party may be allowed to reopen. The district court allowed the state to reopen in *State v. Berg*, where the Minnesota Supreme Court held that the district court did not abuse its discretion in allowing the state to call a witness despite the state's failure to timely disclose the witness. 326 N.W.2d 14, 16 (Minn. 1982).

6

The district court allowed the defense to reopen in *Jouppis*, where the supreme court analyzed the issue, as follows:

> [w]here a defendant whose liberty is at stake rests, perhaps through the inadvertence of his attorney, and then, before the prosecution enters upon its rebuttal or any further proceedings are taken, asks to reopen his case and tenders material evidence, not cumulative, upon a controlling issue, and there is nothing to indicate any improper purpose in failing to produce such evidence earlier, we think he should be permitted to present it in furtherance of a fair trial.

147 Minn. at 90–91, 179 N.W. at 679. Based on this analysis, the supreme court reversed a conviction and remanded for a new trial because the trial court had granted the defense motion to reopen only to exclude the witness's pertinent testimony.

From this caselaw, relevant considerations have emerged to guide the court's discretion in deciding a motion to reopen. In *Caine*, the supreme court identified three factors: (1) when the request was made, (2) whether the evidence was material, not cumulative, and concerned a controlling issue; and (3) whether there was an improper purpose for failing to produce the evidence earlier. 746 N.W.2d at 353 (citing *Jouppis*, 147 Minn. at 89–90, 179 N.W. at 679).

Thomas argues that this caselaw is not dispositive because his case presents the more specific issue of whether a district court errs in granting a motion to reopen after a defendant has moved for acquittal based on the state's failure to prove a prima facie element. No Minnesota caselaw appears to have considered whether the discretion to reopen extends to this specific context. In arguing that no discretion exists in this situation, Thomas relies on *State v. Allen*, where the Connecticut Supreme Court considered

strikingly similar circumstances and caselaw. *Allen* distinguished the caselaw because the state's request to reopen was made as a direct result of the defendant's motion for acquittal. 533 A.2d at 559, 564–66. The defense moved for acquittal because the state had offered no evidence on barrel length, as required for a violation of the weapons-possession statute. *Id.* at 560–61. The district court denied the motion and, the next day, allowed the state to reopen and offer the missing evidence. *Id.* at 560.

In reversing the conviction, the supreme court anchored its analysis on "the fundamental concept that the state has the burden of proving every element of an alleged crime beyond a reasonable doubt," noting that "[o]ne of the greatest safeguards for the individual under our system of criminal justice is the requirement that the prosecution must establish a prima facie case by its own evidence before the defendant may be put to his defense." *Id.* at 562 (quotation omitted). *Allen* reasoned that "had the defendant remained silent until after the verdict had been rendered, the omission of this evidence would have required a judgment of acquittal either in the trial court or on appeal." *Id.* Instead, the defendant moved for acquittal. The court observed that "[h]aving specifically brought this evidentiary gap to the attention of the state, the defendant was effectively victimized by his own diligence as the state used the reopening to supply the missing element of the crime, thus assuring the defendant's conviction." *Id.* at 563. The court concluded that allowing the state to reopen its case under such circumstances would make motions for judgment of acquittal a "dead letter." *Id. Allen* held that it is an abuse of discretion to permit reopening of the state's case when the defendant has specifically identified an evidentiary gap in a motion for acquittal and the state failed to make a prima facie case. *Id.* at 566.

8

*Allen*'s reasoning has some persuasive value, but we note that *Allen* has not been followed by any other jurisdiction.[1] In fact, the other jurisdictions that have addressed this issue have reached various conclusions. *See State v. Collier*, 438 So. 2d 652, 655 (La. Ct. App. 1983) (holding "that it is error to allow the State to reopen its case in a bench trial to prove an essential element of the offense charged after the State has closed, and after the defendant has moved for a judgment of acquittal"); *People v. Whipple*, 760 N.E.2d 337, 341 (N.Y. 2001) (holding that the district court may allow a prosecutor to reopen its case in response to a defense motion for acquittal if "the missing element is simple to prove and not seriously contested, and reopening the case does not unduly prejudice the defense").[2]

---

[1] *But see Lyle v. State*, 987 So. 2d 948, 951 (Miss. 2008) (citing *Allen* approvingly but holding that trial courts may allow the state to reopen to present evidence of an essential element when the omission is inadvertent). In addition, since *Allen* was issued in 1987, Connecticut has limited its application to cases where the defendant specifically identifies the evidentiary gap. *See State v. Mendoza*, 988 A.2d 329, 335 (Conn. App. Ct. 2010) (recognizing this limit in the *Allen* holding).

[2] *See also People v. Whitfield*, 573 N.E.2d 1267, 1274–75 (Ill. App. Ct. 1991) (noting disagreement on this issue in Illinois appellate courts); *People v. Faulkner*, 381 N.E.2d 321, 324 (Ill. App. Ct. 1978) (holding that district court did not abuse its discretion by granting the state's motion to reopen while reserving the defendant's motion for a directed verdict); *State v. McKay*, 723 N.W.2d 644, 648 (Neb. Ct. App. 2006) (holding that the district court had discretion to grant the state's request to reopen following the defendant's motion for discharge but noting that when the state seeks to reopen in order to make a prima facie case, then a finding of abuse of discretion becomes more likely). Under federal law, "a district judge retains wide discretion to allow the government to re-open its case to correct errors 'or some other compelling circumstance . . . justifies a reopening and no substantial prejudice will occur.'" *United States v. Leslie*, 103 F.3d 1093, 1104 (2d Cir. 1997) (quoting *United States v. Hinderman*, 625 F.2d 994, 996 (10th Cir. 1980)). Federal district courts generally allow reopening "to establish venue, identify the defendant, or attend to other technical matters." *Id.*

Importantly, the language of the relevant Minnesota rule supports affirmance in light of the record in this case. The applicable rule of criminal procedure provides that, "[i]n the interests of justice, the court [may] allow any party to reopen that party's case to offer additional evidence." Minn. R. Crim. P. 26.03, subd. 12(g). The language is very broad; it does not make a distinction between the state and the defense, it allows the district court to consider "the interests of justice," and it does not limit "additional evidence" to exclude evidence required to complete the state's prima facie case.[3] Additionally, Minnesota's caselaw demonstrates that motions to reopen occur in a wide variety of circumstances and district courts generally have discretion to grant or deny the motions depending on the circumstances.

Trial is not a game of "gotcha," and a judge may permit the state to correct inadvertent error. *Cf.* Minn. R. Crim. P. 1.02 ("These rules are intended to provide a just determination of criminal proceedings, and ensure a simple and fair procedure that eliminates unjustified expense and delay."); *Whipple*, 760 N.E.2d at 340 ("The motion for a trial order of dismissal gave the People notice of the technical omission, and the issue now is whether, as a matter of law, a trial court may never permit the People to act on such notice—a sort of 'gotcha' principle of law."); 6 Wayne R. LaFave et al., *Criminal Procedure* § 24.6(b) (4th ed. 2015) ("Rather than treat the trial like a game of 'gotcha,' a judge may permit the prosecution to remedy such an oversight.").

---

[3] We note that this rule may differ from the rule about reopening in Connecticut, which is not quoted or discussed in the *Allen* opinion.

Thus we interpret Minnesota Rule of Criminal Procedure 26.03, subd. 12(g), to provide that a district court has discretion to grant or deny a motion to reopen, even when made by the state after the defense has pointed out deficiencies in the state's prima facie case in a motion for acquittal. We note, however, that the state relies on a motion to reopen at its own peril because the district court may deny as well as grant the state's request. *See Whipple*, 760 N.E.2d at 341 (noting that, under New York law, district courts have discretion to deny a state's motion to reopen following a defense motion to dismiss).

In addition, we are "bound by supreme court precedent and the published opinions of [this court]." *State v. M.L.M.*, 785 N.W.2d 763, 767 (Minn. App. 2010). The supreme court held in *Caine* that the abuse-of-discretion standard applies to the district court's decision to permit a party to reopen the case after the party has rested. 746 N.W.2d at 353. The supreme court also identified the relevant factors for a district court to consider. *Caine*, 746 N.W.2d at 353 (citing *Jouppis*, 147 Minn. at 89–90, 179 N.W. at 679). Here, the district court properly analyzed the factors. The state's request to reopen was made immediately after the prosecution rested; the evidence was material, not cumulative, and concerned a controlling issue. Thomas was not surprised by the evidence and did not allege any improper purpose for failing to produce the evidence earlier.[4] Applying the relevant

---

[4] We recognize, as *Allen* did, that allowing the state to reopen its case may discourage defense attorneys from making timely acquittal motions by penalizing them for identifying missing evidence of the state's prima facie case. The factors identified in *Caine* allow the district court to consider these concerns in exercising its discretion. The district court is in the best position to weigh these concerns under the circumstances of each particular trial.

caselaw to this record, this court concludes that the district court did not abuse its discretion by allowing the state to reopen its case to offer evidence of Thomas's prior convictions.

## II.     Jury Instructions

Thomas also argues that the district court improperly granted the state's request to have the jury instructed on expert testimony. Officer Ring, who testified regarding Thomas's alcohol concentration, also testified about his training and experience with the operation of the breath-test machine—the Datamaster—that he administered to Thomas. Officer Ring testified about the test, Thomas's test results, and that he received no error messages from the Datamaster. The officer did not offer any opinion testimony. Thomas did not object to the officer's testimony but later objected to the state's proposed jury instructions, which included an expert-testimony instruction, arguing that it was incorrect to evaluate the testimony of the officer under the expert-testimony standard. The district court agreed with the state that the officer was "an expert as to whether the machine operated appropriately on this particular occasion" and gave the standard jury instruction on expert testimony.

Although Thomas's brief implies that the district court referred to Officer Ring as an expert or vouched for his credibility, we note that the record does not support this view. The instruction given was neutral and patterned after the standard expert-testimony jury instruction. *See* 10 *Minnesota Practice*, CRIMJIG 3.13 (2015). The relevant jury instruction, as read aloud by the district court at trial, is reproduced below:

> Expert testimony. A witness who has special training, education, or experience in a particular science, occupation, or calling is allowed to express an opinion as to certain facts.

12

Determining the believability and weight to be given such opinion evidence you may consider:

One, the education, training, experience, knowledge, ability of the witness. Two, the reasons given for that opinion. Three, the sources of the information. Four, factors already given you for evaluating testimony of other witnesses. Such opinion evidence is entitled to neither more or less consideration by you than other evidence.

This court reviews jury instructions for an abuse of discretion. *State v. Koppi*, 798 N.W.2d 358, 361 (Minn. 2011). A district court has "considerable latitude" in selecting the language for jury instructions. *State v. Gatson*, 801 N.W.2d 134, 147 (Minn. 2011) (quotation omitted). "Jury instructions, reviewed in their entirety, must fairly and adequately explain the law of the case." *Koppi*, 798 N.W.2d at 362. "An instruction is in error if it materially misstates the law," *State v. Kuhnau*, 622 N.W.2d 552, 556 (Minn. 2001), but "[a] mistaken jury instruction does not require a new trial if the error was harmless." *State v. Hall*, 722 N.W.2d 472, 477 (Minn. 2006). "An erroneous jury instruction is harmless only if it can be said that, beyond a reasonable doubt, the error had no significant impact on the verdict rendered." *Id.*

Thomas argues this jury was erroneously instructed on expert testimony based on *State v. Ards*, which held that a police officer's testimony regarding a breath-test machine was not expert testimony and was admissible as lay testimony. 816 N.W.2d 679, 684–86 (Minn. App. 2012). Thomas also points to statutory language, noting that the state did not need expert testimony to introduce breath-test evidence. *See* Minn. Stat. § 634.16 (2014) (providing that the results of infrared or other approved breath-testing instruments are admissible without antecedent expert testimony establishing the trustworthiness of such

13

instruments). Thomas argues that he was prejudiced by the jury instruction because it was an "improper endorsement of the testifying officer" as an "expert."

We conclude that *Ards* is readily distinguishable from this case. In *Ards*, the issue on appeal was whether the district court committed plain error in admitting the officer's testimony regarding reliability of the breath-test results. 816 N.W.2d at 682. This court held that the district court did not plainly err because the police officer testified to his training, did not in fact testify as an expert, and his testimony about reliability was proper as a lay witness. *Id.* at 685. Like Ards, Thomas did not object to the police officer's testimony. Unlike Ards, Thomas does not challenge the admission of the officer's testimony on appeal. Under *Ards* and Minn. Stat. § 634.16, expert testimony is not required to admit breath-test results. It does not follow, however, that it is error to permit expert testimony on the operation of a breath-test machine.

The testifying officer had specialized knowledge, skill, and experience with the DataMaster, and the jury was instructed that, as an element of the offense, it needed to "evaluate the reliability of the testing method and the test results." The district court has broad discretion in assessing an expert witness's qualifications, *Ray v. Miller Meester Adver. Inc.*, 664 N.W.2d 355, 365 (Minn. App. 2003), *aff'd*, 684 N.W.2d 404 (Minn. 2003), and selecting jury instructions. *See Gatson*, 801 N.W.2d at 147. Thus, the district court did not abuse its discretion in instructing the jury on expert testimony.

Further, even if the district court erred in giving the expert-testimony instruction because this officer offered no opinion, "[a] mistaken jury instruction does not require a new trial if the error was harmless." *Hall*, 722 N.W.2d at 477. In light of the district court's

14

instruction that "such opinion evidence is entitled to neither more or less consideration . . . than other evidence," we conclude that any error would have been harmless. Accordingly, we affirm Thomas's conviction.

## DECISION

The district court did not abuse its discretion in granting the state's motion to reopen when made after the state had rested without proving an element of its prima facie case and the defendant had moved for acquittal. Because the state made the request promptly, the evidence was material, not cumulative, and concerned a controlling issue, the omission was inadvertent, and the defendant was not surprised, the district court properly exercised its discretion. Additionally, the district court did not abuse its discretion in instructing the jury on expert testimony where the police officer testified that he had specialized training and experience with a breath-test machine, the officer testified regarding the test and the results, and the defendant does not challenge the admission of the testimony.

**Affirmed.**