*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0668**

State of Minnesota,
Respondent,

vs.

Cory Anthony Klingelhoets,
Appellant.

**Filed February 13, 2017
Affirmed
Halbrooks, Judge**

Cook County District Court
File No. 16-CR-15-55

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Molly Hicken, Cook County Attorney, Grand Marais, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara L. Martin, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Kirk, Presiding Judge; Halbrooks, Judge; and Rodenberg, Judge.

## UNPUBLISHED OPINION

**HALBROOKS**, Judge

Appellant challenges his conviction of first-degree test refusal, arguing that the district court: (1) deprived him of his right to self-representation, (2) committed reversible

error by denying his motion for a judgment of acquittal, and (3) abused its discretion by permitting the state to reopen its case. We affirm.

## FACTS

In March 2015, appellant Cory Anthony Klingelhoets approached a United States port of entry into Minnesota from Canada. Klingelhoets was driving a red Pontiac at a relatively high rate of speed as he approached the entry point in the lane that was designated for commercial trucks. Two Customs and Border Patrol (CBP) officers ordered Klingelhoets to stop and exit his vehicle and then escorted him into a nearby building. The CBP officers smelled alcohol on Klingelhoets. Meanwhile, when another CBP officer got into Klingelhoets's vehicle to move it out of the commercial traffic lane, he discovered an open, half-full can of beer on the floor in front of the driver's seat. The CBP officers immediately notified the Cook County Sheriff's Office.

Deputy Jesse Johnson responded to the call, spoke with a CBP officer and Klingelhoets, and similarly smelled an odor of alcohol coming from Klingelhoets. Klingelhoets told the deputy that he had consumed "four beers and a couple shots." Deputy Johnson initiated field sobriety tests, including the horizontal gaze nystagmus, walk-and-turn, and one-leg stand, the results of which all indicated that Klingelhoets was intoxicated. Klingelhoets registered an alcohol concentration of 0.175 on a preliminary breath test. Deputy Johnson arrested Klingelhoets and read him an implied-consent advisory. The deputy asked Klingelhoets to submit to a breath test, but Klingelhoets refused.

Klingelhoets was charged with first-degree test refusal, in violation of Minn. Stat. § 169A.20, subd. 2 (2014); driving after revocation, in violation of Minn. Stat. § 171.24,

2

subd. 2 (2014); and possession of an open bottle, in violation of Minn. Stat. § 169A.35, subd. 3 (2014).

At multiple hearings prior to trial, Klingelhoets expressed dissatisfaction with his court-appointed public defender. At his contested omnibus hearing, Klingelhoets's attorney told the district court that Klingelhoets did not trust him and wanted to discharge him. But Klingelhoets subsequently agreed to his representation. Klingelhoets renewed his request to discharge his attorney at a plea hearing, stating that he had "trouble believing in [his] attorney at this point in time." A jury trial was scheduled to begin the following week. The conversation at the plea hearing continued:

> DEFENDANT: I don't want to go to trial with [my attorney].
> COURT: You can fire your attorney, but you may not have the right to other court appointed counsel. You understand that? You may be representing yourself.
> DEFENDANT: And why is that?
> . . . .
> COURT: Because you don't get to pick and choose your attorney when you have a public defender that's been appointed on your case.
> DEFENDANT: I don't trust his judgment.

Klingelhoets stated that his right to a fair trial would be violated if he was required to continue with his attorney. The district court reiterated that Klingelhoets could discharge his attorney but that he would represent himself at trial if he did. After the district court scheduled the jury trial, the following exchange occurred:

> MR. WALLACE (Klingelhoets's attorney): Does the public defender's officer remain appointed?
> COURT: Mr. Klingelhoets, are you firing Mr. Wallace or not?
> DEFENDANT: Yeah, I have fired him before.
> COURT: At this point in time?
> DEFENDANT: Yes, Your Honor.

> COURT: Okay. And you understand that you may not, you may not get alternate representation from the public defender's office?
>
> DEFENDANT: So then I don't have the right to a fair trial.
>
> COURT: The question I asked you is pretty simple. Do you understand that you may not have another attorney appointed on your behalf? You can disagree with the policy, but you need to understand that you're not going to get another public defender.
>
> DEFENDANT: Isn't the law the right [to] a fair trial?
>
> COURT: Do you understand what I just said?
>
> DEFENDANT: Not entirely, no.

The district court then stated that "it sounds like Mr. Klingelhoets would appreciate having some conversation with the Chief Public Defender to confirm whether or not he's going to have alternate counsel appointed or not appointed." The record does not indicate whether Klingelhoets met with the Chief Public Defender, but no alternate counsel was appointed.

On August 20, 2015, the first day of trial, Klingelhoets refused to be transported from the jail to the courthouse. Klingelhoets's attorney told the district court that Klingelhoets was unwilling to work with him. The trial was continued. The district court ordered evaluations pursuant to Minn. R. Crim. P. 20.01 and 20.02 to determine whether Klingelhoets was competent to stand trial.

Based on the results of the competency evaluation, the district court determined that Klingelhoets was competent to stand trial. At a review hearing in October 2015, the district court discussed Klingelhoets's options with him, including his right to self-representation with the assistance of standby counsel. The district court denied Klingelhoets's request to have a different public defender appointed to represent him. And although the district court determined that Klingelhoets was mentally competent to stand trial, it concluded that he

4

was mentally incompetent to represent himself based on the diagnoses in his competency evaluation and his conduct at a hearing on August 20, 2016, when Klingelhoets "chose not to speak or did not speak or didn't have the ability to speak." Klingelhoets was represented by his public defender at trial.

On the morning of his rescheduled jury trial, Klingelhoets pleaded guilty to driving after revocation and possession of an open bottle. The test-refusal charge remained as the only matter for trial. Deputy Johnson and two CBP officers testified on behalf of the state. The prosecutor also provided the jury with a redacted version of Klingelhoets's driving record. The record included his prior conviction of criminal vehicular operation. Although Deputy Johnson testified that it was a driving-while-impaired-related conviction, the record did not indicate that the conviction was a felony.

After the state rested, Klingelhoets moved the district court for a judgment of acquittal on the ground that the state failed to prove a necessary element of the first-degree test-refusal charge—specifically, his aggravating felony conviction of criminal vehicular operation. The prosecutor argued that he sufficiently proved the aggravating conviction but moved the district court to permit it to reopen its case for the limited purpose of submitting an additional exhibit, the warrant of commitment for the conviction of felony criminal vehicular operation. The district court granted the state's motion to reopen its case and simultaneously denied Klingelhoets's motion for judgment of acquittal. The prosecutor moved for admission of the exhibit, which the district court received, and the state again rested.

5

The jury found Klingelhoets guilty of first-degree test refusal, and the district court sentenced him to 42 months in prison. This appeal follows.

## D E C I S I O N

## I.

Klingelhoets argues that the district court deprived him of his right to self-representation because it failed to conduct an adequate inquiry before denying his request to discharge his court-appointed attorney and represent himself. We review a district court's denial of a self-representation motion for clear error. *State v. Christian*, 657 N.W.2d 186, 190 (Minn. 2003). But because "the self-representation right embodies such bedrock concepts of individualism and personal autonomy," we cannot apply the harmless-error analysis. *State v. Richards*, 456 N.W.2d 260, 263 (Minn. 1990).

The Sixth and Fourteenth Amendments to the U.S. Constitution guarantee a criminal defendant the right to self-representation in a state criminal proceeding. *Christian*, 657 N.W.2d at 190 (citing *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525 (1975)). But "the right of self-representation is not absolute." *Indiana v. Edwards*, 554 U.S. 164, 171, 128 S. Ct. 2379, 2384 (2008). To grant a criminal defendant's request to represent himself, the district court must conclude: (1) that the request is clear, unequivocal, and timely and (2) that the defendant knowingly and intelligently waived his right to counsel. *Richards*, 456 N.W.2d at 263. Additionally, a "defendant's competence also plays a role in the defendant's ability to waive the right to counsel." *State v. Camacho*, 561 N.W.2d 160, 171 (Minn. 1997).

Klingelhoets argues that he clearly and unequivocally requested to represent himself. A criminal defendant's request to proceed pro se as an alternative position, as opposed to a primary request, is equivocal. *Richards*, 456 N.W.2d at 264. Based on our thorough review of the record, Klingelhoets was clear in his request to discharge his public defender and have new counsel appointed to represent him, but he did not unequivocally ask to represent himself.

At no point during the contested-omnibus hearing or plea hearing did Klingelhoets request to represent himself. At the competency-evaluation-review hearing in October 2015, Klingelhoets renewed his request to discharge his public defender. The district court then asked:

> COURT: Mr. Klingelhoets, before I make a determination as to whether I would allow you to be self-represented—fire your attorney and proceed—I mean, first of all, I want to make sure that I understand exactly what it is you're requesting. Are you asking for a different public defender, or are you asking that you represent yourself?
> DEFENDANT: At this point in time, I mean, I would like to have somebody else represent me or at least help me represent myself. I don't know all the technical lingo and stuff of the rules of court . . . .

Klingelhoets stated that he had "a major conflict" with his attorney. In the district court's attempt to clarify, the conversation continued:

> COURT: I need to have a clear understanding. Are you asking me to assign a different public defender, or are you asking that Mr. Wallace [be] discharged, and then have you proceed without counsel?
> DEFENDANT: Um, I would not like to proceed without counsel. I wish to have some sort of help, some sort of legal help.

7

> COURT: It sounds, sounds to me like you're asking that at a minimum, you have what would be called advisory counsel—
> DEFENDANT: Okay.
> COURT: —which I, which I—the Court has the ability to appoint advisory counsel to somebody who is self-represented, meaning that they don't have an attorney—
> DEFENDANT: Okay.
> COURT: —but need some assistance. I don't, I don't know if—I'm not clear—it's not clear to me whether that's what you're asking for. It's a bit equivocal, because you said you wanted to discharge Mr. Wallace. I don't know if you're asking that a different attorney be appointed for you, or if you want to represent yourself and you're just asking for assistance. What, what are you asking for?
> (There was a pause.)
> DEFENDANT: How much time would it take, basically, to go through the whole attorney process again?
> COURT: What, what attorney process?
> DEFENDANT: If I was to file for another public defender. And then what would be the soonest amount of time that I would be able to speak with this individual?

At another point in the hearing, the district court stated that Klingelhoets did not "have the right to just simply fire one public defender and have another public defender assigned to [his] case." Klingelhoets replied, "Okay. I guess I would like to ask for a different one, if possible."

The district court denied Klingelhoets's request to have a different public defender appointed. After further discussion, and knowing that the district court would not appoint a different public defender, Klingelhoets stated that he did not "want Mr. Wallace as [his] public defender . . . in any way, shape, or form." The district court then asked:

> COURT: You want to discharge Mr. Wallace?
> DEFENDANT: I do want to discharge Mr. Wallace.
> COURT: And represent—and represent yourself?

8

> DEFENDANT: Why does it state in the Rules of Court that the only reason I'll have to represent myself is if it's unjustified?
> COURT: I don't understand your question . . . .

The defendant then asked the district court to "lawfully appoint [him] a new attorney."

We conclude that Klingelhoets's request to represent himself was equivocal. The only clear response he made to the district court's patient line of inquiry was that he wanted to discharge Wallace. At no point did Klingelhoets respond to the district court's questions concerning whether he wanted to represent himself and waive his right to counsel; instead, Klingelhoets reiterated that his right to a fair trial would be violated if the district court did not appoint a different public defender. Because we conclude based on our review of the entire record that Klingelhoets's request was equivocal, we need not address whether the district court correctly applied the mental-competency standard in *Edwards* or *Camacho*. *See Edwards*, 554 U.S. at 170, 128 S. Ct. at 2383; *Camacho*, 561 N.W.2d at 171.

**II.**

Klingelhoets argues that the district court erred by denying his motion for a judgment of acquittal because the state failed to present evidence of his aggravating felony conviction, which is a required element to convict him of first-degree test refusal. *See* Minn. Stat. §§ 169A.20, subd. 2, .24, subd. 1(3)(ii) (2014). We review de novo a motion for judgment of acquittal because it is "procedurally equivalent to a motion for a directed verdict." *State v. McCormick*, 835 N.W.2d 498, 506 (Minn. App. 2013) (quoting *State v. Slaughter*, 691 N.W.2d 70, 74 (Minn. 2005)), *review denied* (Minn. Oct. 15, 2013).

9

A criminal defendant may move for a judgment of acquittal at the close of evidence of either party if the evidence is insufficient to sustain a conviction. Minn. R. Crim. P. 26.03, subd. 18(1)(a). "The test for granting a motion for a directed verdict is whether the evidence is sufficient to present a fact question for the jury's determination, after viewing the evidence and all resulting inferences in favor of the state." *Slaughter*, 691 N.W.2d at 74-75. A district court does not err if it denies a motion for a judgment of acquittal at the same time it grants the state's motion to reopen the case. *State v. Thomas*, 882 N.W.2d 640, 641 (Minn. App. 2016), *review granted* (Minn. Sept. 28, 2016).

In *Thomas*, the defendant was charged with two counts of second-degree driving while impaired, which were enhanced offenses because the defendant had two prior qualified criminal convictions. *Id.* at 642. At trial, the state rested without offering evidence of the defendant's prior convictions, and the defendant immediately moved for judgment of acquittal. *Id.* at 643. During the parties' arguments on the defendant's motion, the state moved to reopen its case so that it could submit evidence of the defendant's prior convictions. *Id.* The district court granted the state's motion to reopen its case and denied the defendant's motion. *Id.* On appeal, we concluded that the district court did not err by denying the motion for judgment of acquittal because it denied the defendant's motion "at the same time that it granted the state's motion to reopen," and it did not abuse its discretion to permit the state to reopen its case under these circumstances. *Id.* at 643-47.

Klingelhoets contends that *Thomas* is distinguishable from his case because, unlike *Thomas*, the district court denied his motion for judgment of acquittal *before* allowing the state to reopen its case. We disagree. As in *Thomas*, the state here moved to reopen its

10

case while the parties argued Klingelhoets's motion for judgment of acquittal. *See id.* at 643. Similar to *Thomas*, the district court granted the state's motion to reopen its case at the same time that it denied Klingelhoets's motion. *See id.*

The state argues that the district court did not err because evidence in the record presented the jury with a question of fact regarding Klingelhoets's aggravating conviction. Because the district court denied Klingelhoets's motion for a judgment of acquittal at the same time it granted the state's motion to reopen its case, we conclude that the district court did not err. Therefore, we do not address the state's argument. *See State v. Vang*, 847 N.W.2d 248, 265 & n.9 (Minn. 2014) (declining to resolve an issue that was not necessary to dispose of the case).

## III.

As an additional basis, Klingelhoets contends that the district court erred by granting the state's motion to reopen its case because the defense had not yet presented its case. We review "the disposition of a party's request to reopen its case after the party has rested under an abuse-of-discretion standard." *State v. Caine*, 746 N.W.2d 339, 352-53 (Minn. 2008).

The district court may, in the interests of justice, "allow any party to reopen that party's case to offer additional evidence." Minn. R. Crim. P. 26.03, subd. 12(g). To determine whether to permit a party to reopen its case, the district court should consider three factors: (1) when the request was made, (2) whether the evidence concerned a controlling issue and was material, not cumulative, and (3) whether failure to produce the evidence earlier was motivated by an improper purpose. *Caine*, 746 N.W.2d at 353;

11

*Thomas*, 882 N.W.2d at 644. We have interpreted Minn. R. Crim. P. 26.03, subd. 12(g) broadly and concluded that a district court may "grant or deny a motion to reopen, even when made by the state after the defense has pointed out deficiencies in the state's prima facie case in a motion for acquittal." *Thomas*, 882 N.W.2d at 646.

Here, in response to Klingelhoets's motion for judgment of acquittal, the state moved the district court to reopen its case for the limited purpose of admitting evidence that Klingelhoets's prior conviction of criminal vehicular operation was a felony-level offense. Klingelhoets only challenges whether the district court abused its discretion based on the timing of the state's request to reopen its case.

The Minnesota Rules of Criminal Procedure lay out the order of a jury trial:

> a. The jury is selected and sworn.
> b. The court may deliver preliminary jury instructions.
> c. The prosecutor may make an opening statement limited to the facts the prosecutor expects to prove.
> . . . .
> e. The prosecutor presents evidence in support of the state's case.
> f. The defendant may offer evidence in defense.
> g. The prosecutor may rebut the defense evidence, and, the defense may rebut the prosecutor's evidence. In the interests of justice, the court may allow any party to reopen that party's case to offer additional evidence.

Minn. R. Crim. P. 26.03, subd. 12. Klingelhoets asserts that the rule only authorizes a district court to grant a party's motion to reopen its case after both the state and the defense have rested and that permitting the state to reopen its case before the defense rests constitutes an abuse of discretion. But because this case is factually indistinguishable from *Thomas*, we conclude that the district court did not abuse its discretion.

12

Klingelhoets also argues that it is fundamentally unfair to permit the state to reopen its case upon a motion for a judgment of acquittal to "remedy gaps in its case." *See State v. Allen*, 533 A.2d 559, 563-64 (Conn. 1987). But we rejected *Allen*'s reasoning in *Thomas*, and we similarly reject it here. *Thomas*, 882 N.W.2d at 644-45.

In summary, because Klingelhoets's requests to represent himself were equivocal, we conclude that his constitutional right to self-representation was not violated and the district court did not clearly err by permitting the public defender to continue representing Klingelhoets. We also hold, based on *Thomas*, that the district court properly exercised its discretion by denying Klingelhoets's motion for judgment of acquittal and granting the state's motion to reopen its case.

**Affirmed.**