**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1645**

State of Minnesota,
Respondent,

vs.

Steven Andrew Ryan,
Appellant.

**Filed September 9, 2024
Affirmed
Frisch, Judge**

Koochiching County District Court
File No. 36-CR-21-462

Keith Ellison, Attorney General, Thomas R. Ragatz, Assistant Attorney General, St. Paul, Minnesota; and

Jeffrey Naglosky, Koochiching County Attorney, International Falls, Minnesota (for respondent)

Andrew C. Wilson, Wilson & Clas, Minneapolis, Minnesota (for appellant)

Considered and decided by Cochran, Presiding Judge; Frisch, Judge; and Reilly, Judge.[*]

**SYLLABUS**

A district court does not abuse its discretion by granting a motion to reopen a party's case-in-chief to present additional evidence during trial pursuant to Minn. R. Crim.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

P. 26.03, subd. 12(g), even though the moving party does not immediately tender the evidence it seeks to present upon reopening.

## OPINION

**FRISCH**, Judge

Appellant challenges the district court's order granting the state's motion to reopen its case-in-chief at trial. Because the district court did not abuse its discretion by granting the motion to reopen, we affirm.

## FACTS

Respondent State of Minnesota charged appellant Steven Andrew Ryan with two counts of first-degree criminal sexual conduct based on the following facts as elicited at trial. In November 2019, the victim moved into a home with Ryan, who was in a relationship with the victim's mother. On August 17, 2021, Ryan entered the victim's bedroom and put his fingers in her vagina. The victim was then 13 years old.

During the victim's sexual-assault examination, the examiner collected several swabs for DNA analysis. DNA analysis of a swab from the victim's chest showed that a "mixture of DNA from [Ryan] and [the victim] cannot be excluded as the source of the DNA" and that it "is estimated that 99.999999998% of the general population can be excluded from being contributors." DNA analysis of vaginal and perineal swabs showed a mixture of two or more male individuals with the major profile matching Ryan, and that neither Ryan "nor any of his paternally related male relatives [could] be excluded as the contributor" of the major DNA profile. And DNA analysis of a cervical swab showed that

2

the "Y-chromosomal" matched Ryan and that neither Ryan "nor any of his paternally related male relatives [could] be excluded as the contributor of this major DNA profile."

The matter was scheduled for trial starting March 27, 2023. At a pretrial hearing, defense counsel declined to stipulate to chain of custody of certain evidence, and both the state and defense counsel indicated that they intended to call as a witness the forensic scientist who completed the DNA analysis (the forensic scientist).

On March 22, the state requested a continuance because one of the witnesses it needed to establish chain of custody was unavailable for trial and the parties could not "reach a stipulation as to chain of custody witnesses."

On March 27, the district court held a scheduling conference. The district court set trial for May 8, noting that it blocked the entire week for trial and that, if needed, trial could continue into the following week. The district court also stated, "And I suggest you get your subpoenas out immediately, this week. Make sure we have everyone that we need." The state informed the district court that one of the witnesses needed to establish chain of custody, the forensic scientist, was unavailable from May 1 to May 15. The state, however, noted that it would "attempt to work with the [Minnesota Bureau of Criminal Apprehension]" because the forensic scientist "was important to both the State and [defense counsel]." The district court maintained the May 8 trial date and directed the state to investigate the scheduling conflict with the forensic scientist. On April 11, the state filed an additional witness list, which included the forensic scientist's supervisor.

Trial commenced on May 8. The district court noted that it "looks like at this point the trial will be certainly going into next week with defense witnesses who are from out of

3

state [and] not going to be able to be here until the weekend.  And then, earliest they would be able to testify obviously, is Monday."  The district court informed potential jurors that it anticipated that trial would continue into the following week.

On May 10, the district court noted that "the defense has given the State notice quite some time ago of the need to have the full chain [of] custody to be able to present here."

On May 11, the state informed the district court that it intended to call the forensic scientist's supervisor as its last witness to present evidence related to the DNA analysis that the forensic scientist performed and for which the supervisor completed a technical review.  Ryan objected.  Following arguments, the district court ruled that it would not permit the supervisor to testify about the content of DNA analysis reports that the forensic scientist prepared because the state had notice, pursuant to Minn. Stat. § 634.15, subd. 2 (2022), that it would need testimony from the forensic scientist at trial.  The district court also noted that the state did not ask for a continuance after it notified the court that there may be a scheduling conflict with the forensic scientist.  Immediately following the ruling, the state rested its case.  The state had not presented its DNA-analysis evidence as part of its case-in-chief.

Ryan moved for a judgment of acquittal on both counts, which the district court denied with respect to one count and reserved ruling with respect to the other.  Defense counsel then informed the court that three witnesses were "coming in from out of state Monday morning" to testify.  The district court confirmed that Ryan intended to testify at trial the following day and that defense counsel had no other witnesses available to testify

before the weekend.  The jury returned to the courtroom, and the state rested its case in the presence of the jury.

The following day, May 12, defense counsel informed the district court that Ryan intended to waive his right to testify, reserving the right to change his decision pending a motion from the state to reopen its case to allow DNA-analysis evidence through the testimony of the forensic scientist the following Monday, May 15.  The state explained that it learned the previous evening that the forensic scientist was flying back to the United States over the weekend and would be available to testify on May 15.  The state produced text messages with the forensic scientist confirming these representations.

The district court asked why the state had not earlier moved for a continuance of the trial date.  The state explained that it did not seek a continuance because it "filed the last motion for continuance" and that it was "trying to read the court."  The state further noted that the jury knew that the case would continue into the following week and that defense counsel also wanted to continue the case into the following week.  And the state noted that the forensic scientist could be available in the morning.

Ryan opposed the motion, arguing that permitting the state to reopen its case-in-chief would cause him "extreme prejudice" because he prepared his trial strategy, theory of the case, and cross-examination based on the understanding that the forensic scientist would not be testifying at trial.  Defense counsel also asserted that the state could have resolved the scheduling issue with the forensic scientist before trial and that it was improper for the state to now call the forensic scientist and extend the length of trial.

The district court granted the state's motion to reopen its case-in-chief. The following Monday, the district court, using language the parties had prepared, stated, "All right, I understand the State has requested to reopen their case to call one additional witness. Is that correct?" The state responded that it had. The district court told the state that it "may do so" and asked for the next witness. The state called the forensic scientist, who testified as to the results of the DNA analysis. The state then rested for the second time.

Ryan testified in support of his case, as did his former wife, his son, and his daughter.

The jury found Ryan guilty of one count of first-degree criminal sexual conduct. The district court entered a conviction for that count and sentenced Ryan to 158 months' imprisonment.

Ryan appeals.

## ISSUE

Did the district court abuse its discretion by granting the state's motion to reopen its case-in-chief?

## ANALYSIS

Ryan argues that the district court abused its discretion by permitting the state to reopen its case-in-chief because the state did not immediately tender the forensic scientist

6

for testimony at the time of its motion to reopen, and the district court should not have otherwise granted the state's motion. We disagree.

"In the interests of justice, the court may allow any party to reopen that party's case to offer additional evidence." Minn. R. Crim. P. 26.03, subd. 12(g). When deciding whether to permit a party to reopen its case-in-chief, a district court considers three factors, also known as the *Caine* factors: "(1) when the request was made; (2) whether the evidence was material, not cumulative, and concerned a controlling issue; and (3) whether there was an improper purpose for failing to produce the evidence earlier." *State v. Thomas*, 891 N.W.2d 612, 618, 619 (Minn. 2017) (citing *State v. Caine*, 746 N.W.2d 339, 353 (Minn. 2008)) (setting forth the factors and referring to them as the *Caine* factors). We review a district court's decision on a party's motion to reopen its case-in-chief for an abuse of discretion. *Id*. at 618.

Ryan first argues that the district court misapplied the law because a moving party must immediately tender the evidence it seeks to present upon reopening its case-in-chief, and here the forensic scientist was not immediately available to testify when the state moved to reopen. Ryan cites no authority in support of such a requirement, and we are aware of none. It is true that the circumstances in other reported cases involve the immediate production of evidence upon reopening and do not appear to involve a delay in the offer of evidence. *See id*. at 615 (noting that the state offered certified copies after the court granted its motion without noting passage of time); *State v. Berg*, 326 N.W.2d 14, 15-16 (Minn. 1982) (noting that the district court permitted the state to reopen its case to call a witness without noting that time passed between the ruling and when the witness

7

testified); *cf. State v. Jouppis*, 179 N.W. 678, 678-79 (Minn. 1920) (reversing the district court's exclusion of evidence after reopening the appellant's case and explaining that the witness who was going to testify upon reopening had been present throughout the trial but was not called, and had already begun testifying when the district court ruled). But there is no requirement set forth in any rule, statute, or caselaw that a district court may grant a motion to reopen only when the party immediately tenders the evidence at the time of the motion. Such a hard and fast rule would undermine a district court's ability to exercise its broad discretion in the management of the circumstances of a given trial. *See State v. Blom*, 682 N.W.2d 578, 609 (Minn. 2004) (stating that "courts are vested with discretion in managing trials"); *Thomas*, 891 N.W.2d at 618 (referencing the "broad discretion" rule 26.03, subdivision 12(g), accords a district court to reopen a party's case).

We therefore hold that a district court does not abuse its discretion by granting a motion to reopen a party's case-in-chief to present additional evidence during trial pursuant to Minn. R. Crim. P. 26.03, subd. 12(g), even though the moving party does not immediately tender the evidence it seeks to present upon reopening.

Ryan next argues that the district court abused its discretion by granting the state's motion to reopen because the district court should have weighed the first and third *Caine* factors—when the request was made and whether the evidence was not presented earlier for an improper purpose—in favor of denying the state's motion.[1] Ryan specifically argues that the district court should have weighed the first *Caine* factor in his favor because the

---

[1] Ryan concedes that the second *Caine* factor—whether the evidence was material, not cumulative, and concerned a controlling issue—weighed in the state's favor.

state did not move to reopen its case-in-chief immediately after resting and instead waited until the following day to make its motion, and the state sought to reopen its case-in-chief the following Monday, rather than on the same day as its motion. Ryan emphasizes that the state was aware of the potential scheduling issues with the forensic scientist, that the district court earlier asked the state to determine the nature of the scheduling issue, and that the state did not request a continuance and instead made a "strategic decision" to attempt to call another witness.

The district court reasoned that the first *Caine* factor did not weigh against the state because the only event that occurred between the state resting and its motion to reopen was Ryan's motion for judgment of acquittal and the state acted promptly upon learning that the forensic scientist would be available to testify. *See Thomas*, 891 N.W.2d at 616-20 (holding that "the district court did not err when it ruled on the State's motion to reopen" before ruling on the defendant's motion for judgment of acquittal and concluding that the district court did not abuse its discretion when it granted the state's motion to reopen). The district court's summary of the procedural history is supported by the record. The record also shows that the state informed defense counsel "as soon as [it] learned" that the forensic scientist could be available and moved to reopen "first thing" in the morning. We discern no abuse of discretion in the district court's decision to not weigh the first *Caine* factor against the state.

Ryan also argues that the district court should have weighed the third *Caine* factor against the state because the state's failure to present the forensic scientist's testimony earlier amounts to an improper purpose—that the state did not utilize the tools at its

9

disposal to ensure that the forensic scientist would be available to testify at trial. Ryan cites no authority requiring the state to undertake certain actions or that its failure to do so rises to the level of an "improper purpose."

The district court reasoned that this factor did not weigh against the state because the evidence did not conclusively establish that the state could have known that the forensic scientist would be available to testify the following Monday before it rested, because the trial was ongoing and would continue the following Monday based on Ryan's request, because the jury was expecting the trial to continue on Monday, and because the evidence could not have been produced earlier as the forensic scientist was unavailable and out of the country. The state made efforts to learn about whether it would need the forensic scientist to testify after the district court rescheduled trial from March to May, emailing defense counsel twice and eventually learning by phone call at least ten days prior to trial that Ryan would require the forensic scientist to testify pursuant to Minn. Stat. § 634.15, subd. 2. And while the state's attempt to introduce the evidence through the supervisor was ultimately unsuccessful, we discern no abuse of discretion in the district court's determination that, based on the circumstances, it would not weigh the third *Caine* factor against the state. We therefore discern no abuse of discretion by the district court in its application of the *Caine* factors or in granting the state's motion to reopen its case-in-chief at trial.

## DECISION

There is no requirement that a party seeking to reopen its case-in-chief pursuant to Minn. R. Crim. P. 26.03, subd. 12(g), immediately tender the evidence it seeks to present.

We therefore hold that a district court does not abuse its discretion by granting a motion to reopen a party's case-in-chief to present additional evidence during trial pursuant to Minn. R. Crim. P. 26.03, subd. 12(g), even though the moving party does not immediately tender the evidence it seeks to present upon reopening. And because we discern no abuse of discretion in the district court's *Caine*-factor analysis, we affirm.

**Affirmed.**